863 F.2d 334
 130 L.R.R.M. (BNA) 2179, 57 USLW 2397,
110 Lab.Cas. P 10,891
 Thomas C. TERRY; D.B. Fields; Jim Crowe; Keith Barker;
James A. Richards; Don Wright; David L. Giltz; Dale
Bishop; Tony Baity; James R. Davis; Don Britt; Lonnie
Davis; Jim Wilson; David C. King; Donald E. Henderson;
Arthur Jarrell; Ron Ray; J.C. Greer; Gary Peebles;
Harold Dyson; Ed Strange; Sam E. Callahan; George C.
Blankenship, Jr.; Paul Embry; Clayton Worley; John R.
Marshal; Robert C. Munsey, Plaintiffs-Appellees,
v.
CHAUFFEURS, TEAMSTERS AND HELPERS, LOCAL 391; McLean
Trucking Company, Defendants--Appellants.
 No. 87-3896.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 4, 1988.
Decided Dec. 20, 1988.
 
 John David James (Smith, Patterson, Follin, Curtis, James & Harkavy, Greensboro, N.C., on brief), for defendants-appellants.
 Robert Mauldin Elliot (Pfefferkorn, Pishko & Elliot, P.A., Winston-Salem, N.C., on brief), for plaintiffs-appellees.
 Before SPROUSE, ERVIN and WILKINS, Circuit Judges.
 SPROUSE, Circuit Judge:
 
 
 1
 This is an interlocutory appeal by the Chauffeurs, Teamsters & Helpers, Local 391 ("the Union") from the district court's order refusing to strike the jury trial demand of the plaintiffs, Thomas C. Terry and twenty-six other truck drivers (hereinafter "Terry"), holding that Terry was entitled under the seventh amendment to the United States Constitution to a jury trial of his hybrid Sec. 301/duty of fair representation action, see Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), against his employer and the Union.[1] Terry v. Chauffeurs, Teamsters & Helpers, Local 391, 676 F.Supp. 659 (M.D.N.C.1987). The district court certified its ruling under 28 U.S.C. Sec. 1292(b), and we granted the Union's petition for an interlocutory appeal to consider this single issue.
 
 
 2
 The plaintiffs were all drivers employed by McLean Trucking Co., Inc., and living in locations other than Winston-Salem, North Carolina. They successfully "bid" on driver vacancies stated by McLean to exist in its Winston-Salem terminal but, after moving to that area, were alternately employed and laid off. In his complaint, Terry alleges that McLean breached its collective bargaining agreement by manipulating recall procedures so as to give other drivers preferences over him. He complains that he consequently sustained substantial loss of wages. He also alleges that the Union failed to fairly represent him in the grievance proceedings he pursued to rectify McLean's breach.
 
 
 3
 The Union presented Terry's grievances to the Eastern Conference Joint Area Committee, which had been created by the collective bargaining agreement between McLean and the Union. That Committee ordered McLean to adjust its layoff policy to comply with a Change in Operation Plan previously agreed upon between McLean and the Union. Terry claims that McLean thereafter engaged in a pattern of layoff and recall in order to circumvent this ruling, and he filed a second grievance, this time with the Joint Bi-State Grievance Committee. It was denied. Terry contends that the Union conspired with McLean and acquiesced in its violation of his rights and in other ways breached its duty of fair representation in the grievance proceedings.
 
 
 4
 In his complaint filed in the district court, Terry first demanded a declaratory judgment that McLean and the Union acted unlawfully and violated his rights under the law and under the collective bargaining agreement. He also demanded a permanent injunction ending the alleged violations and directing McLean to place him in his proper seniority position. In addition, he requested compensatory and punitive damages, attorneys' fees, and costs.
 
 
 5
 * General seventh amendment jurisprudence is well-settled. Thus, only a brief summary is necessary to consider its application to the hybrid Sec. 301/duty of fair representation action.
 
 
 6
 The seventh amendment to the Constitution of the United States provides:
 
 
 7
 In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.
 
 
 8
 The Supreme Court, of course, has long recognized that the protection provided by this language extends well beyond the common-law forms of action existing in 1791. Parsons v. Bedford, 28 U.S. (3 Pet.) 433, 447, 7 L.Ed. 732 (1830). Briefly stated, the Court in Parsons held that the seventh amendment applies in all suits which are in the nature of a suit at common law. Any uncertainty concerning the application of the rule to "mixed" suits of law and equity was resolved by Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959), decided after the merger of law and equity in the Federal Rules of Civil Procedure. See Fed.R.Civ.P. 2; see also Rules Enabling Act of 1934, ch. 651, Sec. 2, 48 Stat. 1064. The Court there held "that only under the most imperative circumstances, circumstances which in view of the flexible procedures of the Federal Rules we cannot now anticipate, can the right to a jury trial of legal issues be lost through prior determination of equitable claims." 359 U.S. at 510-11, 79 S.Ct. at 957 (footnote omitted). It therefore required that in "mixed" cases, in the absence of irreparable harm to the plaintiff seeking equitable relief, the legal issues should be tried to a jury before the court ruled on equitable claims. Id. at 506-07, 510, 79 S.Ct. at 954-55, 956-57.
 
 
 9
 Since Beacon Theatres, the Court has reemphasized that the presence of an equitable claim or a request for an equitable remedy should not prevent legal issues or remedies from going to a jury. In Dairy Queen, Inc. v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962), the Court made clear that a trial court must independently determine whether the essential nature of the claim for relief was legal or equitable regardless of the "choice of words used in the pleadings." Id. at 478, 82 S.Ct. at 900. In Ross v. Bernhard, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970), the Court divided an action which traditionally was primarily equitable into its legal and equitable components. In that shareholder's derivative action, the Court held:
 
 
 10
 where equitable and legal claims are joined in the same action, there is a right to jury trial on the legal claims which must not be infringed either by trying the legal issues as incidental to the equitable ones or by a court trial of a common issue existing between the claims. The Seventh Amendment question depends on the nature of the issue to be tried rather than the character of the overall action.
 
 
 11
 Id. at 537-38, 90 S.Ct. at 738. The Court in Ross formulated a test for determining the legal nature of an issue which required the lower court to consider "first, the pre-merger custom with reference to such questions; second, the remedy sought; and, third, the practical abilities and limitations of juries." Id. at 538 n. 10, 90 S.Ct. at 738 n. 10.
 
 
 12
 The Court also applied this constitutionally mandated preference for jury trial in the context of rights created by statute. In Curtis v. Loether, 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974), it stated:
 
 
 13
 when Congress provides for enforcement of statutory rights in an ordinary civil action in the district courts, where there is obviously no functional justification for denying the jury trial right, a jury trial must be available if the action involves rights and remedies of the sort typically enforced in an action at law.
 
 
 14
 Id. at 195, 94 S.Ct. at 1009.
 
 II
 
 15
 The Union contends that only equitable issues are presented in this hybrid Sec. 301/duty of fair representation case, and, therefore, Terry has no constitutional right to a trial by jury. In support of this contention, the Union argues because the Supreme Court in United Parcel Service, Inc. v. Mitchell, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981), and DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), stated that there was no precise analogy to the hybrid action in the common law, the action must be considered essentially equitable in nature. Terry, however, stresses the second factor of the Ross test and urges that the issues framing the action and the remedies flowing from them vel non must be examined individually in determining whether the underlying issues are legal or equitable--that "[t]he Seventh Amendment protection depends on the nature of the issue to be tried rather than the character of the overall action." Ross, 396 U.S. at 538, 90 S.Ct. at 738.
 
 
 16
 In both Mitchell and DelCostello, the Court faced the problem of which statute of limitations applied to hybrid Sec. 301/duty of fair representation actions. In Mitchell, the Court considered the choice of New York's ninety-day limit for challenging an arbitration decision or its six-year limit for breach of contract actions. In rejecting the six-year period, the Court noted that an "indispensable predicate" for a hybrid action was a demonstration that the union had breached its duty of fair representation in the grievance or arbitration hearing. 451 U.S. at 62, 101 S.Ct. at 1563-64. Only on such a showing could the otherwise final and binding arbitration decision be set aside and the issue of the breach of a collective bargaining agreement be reopened and tried in the courts. Therefore, finding that these peculiar requirements of a hybrid action made the claim "more a creature of 'labor law' ... than ... of general contract law" and that labor policy required a " 'relatively rapid disposition of labor disputes,' " the Court chose to borrow the shorter period provided by New York's arbitration statute of limitations. Id. at 63, 101 S.Ct. at 1564.
 
 
 17
 In DelCostello, the Court reconsidered the rationale underlying the application of the statute of limitations to a hybrid Sec. 301/duty of fair representation action. It said:
 
 
 18
 Such a suit, as a formal matter, comprises two causes of action. The suit against the employer rests on Sec. 301, since the employee is alleging a breach of the collective bargaining agreement. The suit against the Union is one for breach of the Union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act. "Yet the two claims are inextricably interdependent." ... Mitchell [451 U.S.] at 66-67, 101 S.Ct. at 1566 (Stewart, J., concurring in judgment) ... [Such an action] has no close analogy in ordinary state law. The analogies suggested in Mitchell both suffer from flaws, not only of legal substance, but more important, of practical application in view of the policies of federal labor law and the practicalities of hybrid Sec. 301/fair representation litigation.
 
 
 19
 462 U.S. at 164-65, 103 S.Ct. at 2291 (footnote omitted).
 
 
 20
 While continuing to hold that the hybrid action was closer to an action to vacate an arbitration decision than to a breach of contract action, the Court in DelCostello recognized that this analogy too was imperfect and noted that for practical reasons the state limitations periods for challenging arbitration decisions were too short and "fail to provide an aggrieved employee with a satisfactory opportunity to vindicate his rights." Id. at 166, 103 S.Ct. at 2291. It noted that "the closest state-law analogy" was a legal malpractice action, as if the union were "a lawyer who mishandles a commercial arbitration." Id. at 167, 103 S.Ct. at 2292.
 
 
 21
 The Court decided, however, that the malpractice analogy was not responsive to policies underlying the application of statutes of limitations in this labor-law context. It reasoned that under Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), and Bowen v. United Parcel Service, 459 U.S. 212, 103 S.Ct. 588, 74 L.Ed.2d 402 (1983), the union was only responsible for increases in a plaintiff's damages caused by its breach of duty. Thus, a malpractice statute of limitations would only provide that greater time period for the union's portion of the damages. The employer, protected by the short limitations period designed for challenges to arbitration decisions, might escape responsibility for its large portion of the damages unless the employee managed to file his claim within that short period. Finally, finding no adequate analogy in state law, the Court resorted to the six-month period for making charges of unfair labor practices under Sec. 10(b) of the National Labor Relations Act as the closest and most just analogy.
 
 
 22
 In Quinn v. DiGiulian, 739 F.2d 637 (D.C.Cir.1984), the D.C. Circuit held that DelCostello had no application to an issue of the right to trial by jury. In its view, the Supreme Court's holding that the hybrid action had no close analogy to ordinary state tort or contract actions did not resolve the legal/equitable determination necessary for seventh amendment analysis. Further, the D.C. Circuit astutely observed that "the nature of the remedies authorized and sought has become a more reliable clue to whether the action is legal or equitable in nature than the existence of a precise common law analogy to the modern cause of action," id. at 646 (citing Curtis, 415 U.S. at 196-97, 94 S.Ct. at 1009-10). Contra Leach v. Pan American World Airways, 842 F.2d 285 (11th Cir.1988) (holding that the DelCostello rationale foreclosed the seventh amendment issue).
 
 
 23
 Although analogies to state-law actions are helpful in seventh amendment analysis, the absence of a single clear analogy does not preclude a determination that a statutory action involves "rights and remedies of a sort typically enforced in an action at law." Curtis, 415 U.S. at 195, 94 S.Ct. at 1008-1009. Beacon Theatres, Dairy Queen, and their progeny instructed the district courts to ensure that all issues of fact inherent in any legal claims be tried to a jury before the Court resolved any remaining factual issues raised by equitable claims. Ross and Curtis made clear that the nature of the claims and remedies determine whether a right to a jury trial is present, not the overall nature of the action.
 
 
 24
 Making a law/equity determination for seventh amendment purposes is a far different task than choosing a statute of limitations in a labor-law context. While the hybrid action we consider is the same kind of action the Supreme Court considered in Mitchell and DelCostello, there is no need for us to treat the hybrid action as an indivisible whole when performing a seventh amendment analysis. Indeed, the Beacon Theatres line of cases instructs us to do just the opposite.
 
 III
 
 25
 We do not think it practical to resolve the legal/equitable dichotomy in this labor-law context with a bright-line rule. As the Supreme Court cogently recognized in both Mitchell and DelCostello, actions to enforce rights under the Labor Management Relations Act (hereinafter "LMRA"), 29 U.S.C. Sec. 141, et seq., and other labor-law statutes do not neatly fit any mold of traditional common-law actions. Therefore, we must analyze the issues and remedies in each hybrid case.
 
 
 26
 Terry asks for declaratory judgment, injunctive relief, and monetary relief. The part of this action seeking injunctive relief against McLean has been mooted by McLean's bankruptcy. The questions of declaratory and injunctive relief against the Union, however, are still viable. The demand for injunctive relief raises equitable issues. Resolution of the declaratory relief demand, however, raises legal issues that may well require both a determination by the court of the meaning of the collective bargaining agreement and a resolution by the jury of disputed facts concerning whether that agreement was breached. Both the interpretative issues that the court must determine in this context and the factual issues that the fact finder must resolve relate to the resolution of legal issues.
 
 
 27
 It is true that claims for back wages in other type actions have been characterized variously both as legal and equitable in nature.[2] If Congress had specifically classified backpay as an equitable remedy in the LMRA, there would be, of course, no jury trial right question. In enacting the LMRA, however, Congress did not expressly provide for either legal or equitable relief, and backpay, as a form of money damages, may appropriately be considered legal in nature. Thus, although a Sec. 301 action to remedy a violation of a collective bargaining agreement has no counterpart in common law, in our view, the claims for damages asserted here involve legal issues, and, like the Supreme Court in Curtis, we find no functional justification for denying the jury-trial right. See 415 U.S. at 195, 94 S.Ct. at 1008-1009.
 
 
 28
 We review the duty of fair representation increment of the hybrid action in the same light. Like its Sec. 301 sibling, it is derived from congressional enactment, albeit by judicial interpretation of the statute. See, e.g., Vaca, 386 U.S. at 177, 87 S.Ct. at 909-10. Further, in DelCostello, the Supreme Court noted that "the closest state-law analogy" to this action is a state tort malpractice action. 462 U.S. at 167, 103 S.Ct. at 2292. In our view, this component of the action is also legal in nature.
 
 
 29
 As we have indicated, we are unable to structure a bright-line rule stating which specific issues in hybrid Sec. 301/duty of fair representation cases are subject to the seventh amendment requirement of a jury trial. We hold instead that, although many aspects of this action are intertwined, presenting both equitable and legal issues, either party is entitled to a jury trial of identifiable legal issues. We think the dictates of Beacon Theatres, Dairy Queen, and Curtis require that result and that Mitchell and DelCostello did not sequester these hybrid cases from this general body of law.
 
 
 30
 There being both equitable and legal issues present in this case, the district court correctly upheld Terry's right to a jury trial on the issues of declaratory judgment relief and damages. Its decision is therefore affirmed.
 
 
 31
 AFFIRMED.
 
 
 
 [1]
 The complaint also named the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, and Terry's employer, McLean Trucking Company, Inc., as defendants. The district court granted the international union's motion for summary judgment. McLean has since filed a petition in bankruptcy, and Terry's action against it has been stayed
 
 
 [2]
 Johnson v. Georgia Highway Express, Inc., 417 F.2d 1122, 1125 (5th Cir.1969)) (cited with approval in Great American Federal Savings & Loan Ass'n v. Novotny, 442 U.S. 366, 375, 99 S.Ct. 2345, 2350, 60 L.Ed.2d 957 (1979)) states that back pay in Title VII of the Civil Rights Act of 1964 cases is an equitable remedy. This holding, however, is based in large part on the specific language of Title VII, which expressly authorizes only equitable remedies. See 42 U.S.C. Sec. 2000e-5(g). In Lorillard, Div. of Loew's Theatres, Inc. v. Pons, 434 U.S. 575, 584, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978), however, the Supreme Court distinguished the Title VII cases from cases arising under the provisions of the Age Discrimination in Employment Act. 29 U.S.C. Sec. 621, et seq. The latter statute specifically permits recovery of legal or equitable relief, 29 U.S.C. Sec. 626(b), (c) (1985), and expressly incorporates the procedural aspects of the Fair Labor Standards Act, 29 U.S.C.A. Secs. 216, 217 (1965 & West Supp.1988) under which there is a right to a jury trial. See 434 U.S. at 580, 98 S.Ct. at 869-70