**Brian NICELY, Plaintiff,**

**v.**

**USX (formerly United States Steel), A corporation, and United Steelworkers of America, A Labor Organization, Defendants.**

Civ. A. No. 88–0728.

United States District Court,
W.D. Pennsylvania.

March 30, 1989.

---

James N. Perich, Mohan & Perich, Pittsburgh, Pa., for plaintiff.

Dawne S. Hickton, Richard J. Brean, United Steelworkers of America, Pittsburgh, Pa., for defendants.

## MEMORANDUM OPINION

MENCER, District Judge.

The instant matter is before the Court on a motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, filed on behalf of the defendants, USX and United Steelworkers of America ("USWA").

On June 12, 1985 the plaintiff, Brian L. Nicely ("Nicely"), filed a grievance # EET–85–46 with the USWA against USX alleging that USX breached the collective bargaining agreement, when it failed to assign him as a welder. In his present complaint Nicely asserts that USWA breached its duty of fair representation when Caleb Scott, USWA's Step 3 staff representative, formally withdrew his grievance, rather than appeal it to arbitration, through a September 11, 1987 letter to USX. Accordingly, in the instant matter Nicely has alleged a cause of action under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1976), and a fair representation action pursuant to the National Labor Relations Act, 29 U.S.C. § 151 et seq. These actions are identified as hybrid § 301/fair representation cases. Here, Nicely seeks injunctive relief, backpay, interest, costs and attorneys' fees from USX and USWA and punitive damages from USWA.

Primarily, the defendants assert that Nicely's claims are barred by the six-month statute of limitations established by *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). In *DelCostello* the Su-

preme Court held that the six-month statute of limitations set forth in section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160, is the proper statute of limitations for suits where an employee sues both his employer for breach of the collective bargaining agreement and his union for violating its duty of fair representation. *See Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1976). *See also Hines v. Anchor Motor Freight*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976); *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981); *Bey v. Williams*, 590 F.Supp. 1150, 1153 (W.D.Pa.1984). This Court finds the *Del-Costello* standard to be the proper limitations period for this suit.

The defendants present the affidavit of Caleb Scott which states that Scott informed Nicely of the withdrawal of Nicely's grievance at either the August 26, 1987 or the September 30, 1987 union meetings. Therefore, the defendants assert that Nicely, by filing this complaint on March 31, 1988, filed one day after the running of the statutory period. In response, Nicely contends that Scott did not inform him of the withdrawal of his grievance until 8 weeks after August 3, 1987, which would be October 3, 1987. (August 3, 1987 was the day on which Caleb Scott and John McCluskey, the staff representative for USX, discussed Nicely's grievance.)

 This Court finds that the statute of limitations begins to run when it becomes clear that further internal appeals would be futile. *See Scott v. Local 863, International Brotherhood of Teamsters*, 725 F.2d 226, 229 (3d Cir.1984) (citing *Clayton v. Automobile Workers*, 451 U.S. 679, 689–693, 101 S.Ct. 2088, 2095–97, 68 L.Ed.2d 538 (1981)); *See also Dowty v. Pioneer Rural Electric Co-op., Inc.*, 770 F.2d 52, 56 (6th Cir.) *cert. denied*, 474 U.S. 1021, 106 S.Ct. 572, 88 L.Ed.2d 557 (1985) (limitations period begins to run when plaintiff knows or should have known of the union's alleged breach); *DelCostello v. International Brotherhood of Teamsters*, 588 F.Supp. 902, 909, n. 21 (D.Md.1984) *affirmed* 679 F.2d 879 (4th Cir.1984). Because of the disputed notice issue, this Court determines that the date on which Nicely knew or should have known that the USWA would no longer process his grievance is a genuine issue of material fact.

Second, the defendants seek to have this Court strike Nicely's demand for a jury trial. In *Leach v. Pan American World Airways*, 842 F.2d 285 (11th Cir.1988), the Court of Appeals for the Eleventh Circuit, relying on *United Parcel Service, Inc. v. Mitchell*, 451 U.S. at 62 n. 4, 101 S.Ct. at 1564 n. 4, 67 L.Ed.2d at 740 (1981), and disregarding *Cox v. C.H. Masland & Sons*, 607 F.2d 138 (5th Cir.1979), applied the criteria outlined in *Ross v. Bernhard*, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970), for deciding whether the Seventh Amendment required a jury trial. The Eleventh Circuit held that because the arbitration award stands between the employee and any relief which he may be awarded against the company, the "suit against the employer is 'inextricably intertwined' with that against the union." *Id.* at 290. Additionally, the Eleventh Circuit found that the statutory scheme of labor law provided the "imperative circumstances" under which a jury trial was not required. The Eleventh Circuit also enunciated the opinion that monetary damages were not necessarily a legal remedy. The Eleventh Circuit concluded that it could not separate the legal and equitable remedies and, therefore, a jury trial was not required by the Seventh Amendment.

In *King v. Fox Grocery Co.*, 678 F.Supp. 1174 (W.D.Pa.1988), Judge Weber analyzed the issue in a similar manner as the court in *Leach*. Relying on *Mitchell* and *DelCostello*, the court held that the hybrid action is most "likened to an unfair labor practice action," which is a suit in equity that does not require a jury. *King*, 678 F.Supp. at 1176. The court, although conceding that the § 301 action for backpay is an action providing for a legal remedy, found that because "all relief flows from equitable remedies" and because Congress has created a complex federal statutory scheme without providing for a jury, a jury trial was not required. *King*, 678 F.Supp. at 1177.

In *Quinn v. DiGiulian*, 739 F.2d 637 (D.C.Cir.1984), the Court of Appeals for the District of Columbia, relying on *Curtis v. Loether*, 415 U.S. 189, 194, 94 S.Ct. 1005, 1008, 39 L.Ed.2d 260 (1974), held that the Seventh Amendment applies to statutory claims, if the statute creates legal rights and remedies enforceable in an action for damages. The court also found that because the Supreme Court in *DelCostello* found, in view of *Curtis,* that the nature of the remedies sought is a better clue than the common law analogy, a judge must send to a jury the question whether the union breached its duty and what damage, if any, the plaintiff suffered as a consequence.

■ This Court finds the Fourth Circuit's reasoning in *Terry v. Chauffeurs, Teamsters & Helpers, Local 391*, 863 F.2d 334 (4th Cir.1988), persuasive. The Fourth Circuit, noting *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959), first asked whether the suit was in the nature of a suit at common law. The Fourth Circuit then found that the "imperative circumstances" required by *Ross* to strike a jury demand were only those in which "irreparable harm" would arise. Third, the court, citing *Ross,* 396 U.S. at 538, 90 S.Ct. at 738, noted that the Seventh Amendment depends on the nature of the issue to be tried, rather than the character of the overall action. Thus, the Fourth Circuit concluded that the rights and remedies involved in a § 301/fair representation action were typically enforced in an action at law. Not only is it a jury issue whether the employer breached the collective bargaining agreement but it is also a jury issue whether the union breached its duty of fair representation. In sum, the plaintiff is entitled to a jury trial of all identifiable legal issues such as declaratory relief and damages.

In *Auto Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966), the Supreme Court characterized a § 301 cause of action as a contract action. The Court observed:

> The present suit is essentially an action for damages caused by an alleged breach of an employer's obligation embodied in a collective bargaining agreement. Such an action closely resembles an action for breach of contract cognizable at common law.

*Id.* 383 U.S. at 705, note 7, 86 S.Ct. at 1113, note 7, 16 L.Ed.2d at 199, note 7. The Supreme Court also found that differing state limitations periods for § 301 actions would not disrupt federal uniformity:

> The need for uniformity, then, is greatest where its absence would threaten the smooth functioning of those consensual processes that federal labor law is chiefly designed to promote—the formation of the collective agreement and the private settlement of disputes under it. For the most part, statutes of limitations come into play only when these processes have already broken down. Lack of uniformity in this area is therefore unlikely to frustrate in any important way the achievement of any significant goal of labor policy.

*Id.* 383 U.S. at 702, 86 S.Ct. at 1111, 16 L.Ed.2d at 198.

In *Mitchell* the Supreme Court analyzed the limitations issue in the context of the judicially created hybrid cause of action. The Court recharacterized the nature of the cause of action and focused upon the nature of the breach of duty claim in order to find an analogous limitations period. The Court stated:

> [the] indispensable predicate for such an action is not a showing under traditional contract law that the discharge was a breach of the collective-bargaining agreement, but instead a demonstration that the union breached its duty of fair representation ... Respondent required in some way to show that the union's duty to represent him fairly at the arbitration had been breached before he was entitled to reach the merits of his contract claim. This, in our view, makes the suit more analogous to an action to vacate an arbitration award then to a straight contract action.

*Mitchell*, 451 U.S. at 62, 101 S.Ct. at 1564, 67 L.Ed.2d at 740. The Court continued:

We think that the unfair representation claim made by an employee against his union, even though his employer may ultimately be called upon to respond in damages for it if he is successful, is more a creature of "labor law" as it has developed since the enactment of § 301 than it is of general contract law.

*Id.* 451 U.S. at 63, 101 S.Ct. at 1564, 67 L.Ed.2d at 740. The Court concluded that the 90 day state limitations period for suits to vacate an arbitration award was the proper limitations period.

In *DelCostello* the Supreme Court once again addressed the same issue as in *Mitchell,* but held that federal uniformity concerns mandated that the 6 month limitations period found in § 10(b) of the NLRA was the proper limitations period. The Court, drawing from the language of *Mitchell* and *Hoosier* stated:

"The suit is thus not a straightforward breach-of-contract suit under § 301, as was Hoosier, but a hybrid § 301/fair representation claim, amounting to 'a direct challenge to the private settlement of disputes under [the collective-bargaining agreement].'" *Mitchell, supra,* [451 U.S.] at 66, 67 L.Ed.2d 732[ ], 101 S.Ct. 1559 [1565] (Stewart, J., concurring in judgment), quoting *Hoosier,* 383 U.S. at 702 [86 S.Ct. at 1111]. Also unlike the claim in *Hoosier,* it has no close analogy in ordinary state law. The analogies suggested in *Mitchell* both suffer from flaws, not only of legal substance, but more important, of practical application in view of the policies of federal labor law and the practicalities of hybrid § 301/fair representation litigation. In *Mitchell,* we analogized the employee's claim against the employer to an action to vacate an arbitration award in a commercial setting. We adhere to the view that, as between the two choices, it is more suitable to characterize the claim that way than as a suit for breach of contract ... Moreover, an action to vacate a commercial arbitral award will rarely raise any issues not already presented and contested in the arbitration proceeding itself.

*Id.* 462 U.S. at 165, 103 S.Ct. at 2291, 76 L.Ed.2d at 489. In *DelCostello* the Court seemed to embrace Justice Stewart's dissent in *Mitchell:* ·

The employee's interest in setting aside the 'final and binding' determination of a grievance through the method established by the collective bargaining agreement unquestionably implicates 'those consensual processes that federal labor law is chiefly designed to promote—the formation of the agreement and the private settlement of disputes under it.' *Hoosier,* 383 U.S. at 702, 16 L.Ed.2d 192 [198], 86 S.Ct. 1107 [1111]. Accordingly, '[t]he need for uniformity' among procedures followed for similar claims, ibid., as well as the clear congressional indication of the proper balance between the interests at stake, counsels the adoption of ...

*Id.* 462 U.S. at 171, 103 S.Ct. at 2294, 76 L.Ed.2d at 493. Thus, the Court emphasized the private nature of the resolution of disputes in the labor law area and the unique nature of this developing federal common law cause of action. *DelCostello,* 462 U.S. at 163, 103 S.Ct. at 2289, 76 L.Ed. 2d at 488. Based upon the seemingly broad language of *DelCostello,* the courts in *Leach* and *King* concluded that the Supreme Court intended to usurp the Seventh Amendment right in this area.

Despite the recharacterization of the cause of action by the Supreme Court, we find that the Supreme Court characterized the hybrid action exclusively for limitations purposes and its discussion of uniformity focused upon state and federal relations. We also find that the language in *Mitchell* and *DelCostello,* which the defendants argue is instrumental in eliminating the Seventh Amendment right, is language taken from *Hoosier* and relates exclusively to the need for federal uniformity of limitations' periods. Language found in *Hoosier* and its progeny, such as the "final and binding determination of a grievance through the method established by the collective bargaining agreement unquestionably implicates those consensual processes that federal labor law is chiefly designed to promote—the formation of the agreement and

the private settlement of disputes under it," *Hoosier*, 383 U.S. at 702, 86 S.Ct. at 1111, 16 L.Ed.2d at 198, only addresses the issue of limitations in *Hoosier*.

The balance of interests in this area are: national interests in stable bargaining relationships and finality of private settlements, and an employee's interest in setting aside what he views as an unjust settlement under the collective bargaining system. In *DelCostello* the Court stressed the importance of protecting the grievance and arbitration machinery, and the "law of the shop." The Court spoke of avoiding disparate federal and state interpretation of critical terms in a collective-bargaining agreement that give "meaning and content" to that agreement. The Court concluded that the courts should move toward fashioning federal common law where state law fails and emphasized the unique nature of the federal labor area. Most significantly, the Court noted that in cases where the union fails to pursue a grievance to arbitration, the parallel to vacation of an arbitral award seems tenuous. *Id.* 462 U.S. at 166–167, 103 S.Ct. at 2291–2292, 76 L.Ed.2d at 490.

We conclude that the court should fashion uniform federal law when non-uniformity would inevitably exert a disruptive influence upon both the negotiation and administration of collective bargaining agreements. *See Teamsters Local v. Lucas Flour Co.*, 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593. We fail to see how a jury trial would be a disruptive influence on the interests addressed.

We find that the Supreme Court in *DelCostello* has held that a § 301 cause of action, although combined with the fair representation suit, is "inextricably interdependent." *DelCostello*, 462 U.S. at 164, 103 S.Ct. at 2290–91, 76 L.Ed.2d at 489. Thus, the Court in *DelCostello* made it clear that the two causes of action are

materially independent of one another but are joined for purposes of creating a federal cause of action. Accordingly, we disagree with the *Leach* and *King* holdings because they characterized the hybrid cause of action as "inextricably intertwined."[1]

We do find the Supreme Court creating a body of federal labor law. The Court stated:

> Many fair representation claims ... include allegations of discrimination based on membership status or dissent views, which would be unfair labor practices under § 8(b)(1) or (2). Aside from these clear cases, duty of fair representation claims are allegations of unfair, arbitrary, or discriminatory treatment of workers by union—as are virtually all unfair labor practice charges made by workers against unions. *See generally* R. Gorman, Labor Law 698–701 (1976). Similarly, it may be the case that alleged violations by an employer of a collective bargaining agreement will also amount to unfair labor practices.

*DelCostello*, 462 U.S. at 170, 103 S.Ct. at 2294, 76 L.Ed.2d at 493.

However, we are reluctant to disregard the *Ross* criteria and do away with a jury trial merely because of implications found in *DelCostello*. This Court is also persuaded that the federal uniformity concerns addressed in *Hoosier* and its progeny are unrelated to the Seventh Amendment issue.

Additionally, we find that the Third Circuit has preserved the Seventh Amendment right to a jury trial in related areas. The Third Circuit has held, in a suit under the Labor Management Relations Act, that the case is "legal in nature" where the plaintiff recovers money for himself and, thus, requires a jury. *See Nedd v. United Mine Workers of America*, 556 F.2d 190, 206 (3d Cir.1977). The Third Circuit has also held

---

1. We also disagree with the entanglement theory which Justice Stewart adopted in *Mitchell.* He wrote:

> But here, unlike Hoosier, the latter action, like the breach of duty claim, is a challenge to a result reached in the contractual grievance resolution system. Accordingly, the policy of

promoting stability in collective bargaining underlying the time bar of § 10(b) is applicable to this aspect of respondent employee's case as well.

*Id.* 451 U.S. at 69, 101 S.Ct. at 1567, 76 L.Ed.2d at 744.

that the fact that the liability may be based on federal rather than state law has no bearing on the Seventh Amendment issue. *Id.* at 207.

In *Turner v. CF & I Steel Corp.*, 770 F.2d 43, 46 (3d Cir.1985), *cert. denied*, 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986) and *Cox v. Keystone Carbon Company*, 861 F.2d 390 (3d Cir.1988) the Third Circuit has found that the Seventh Amendment provides for a jury trial in the statutory setting of the Employment Retirement Income Security Act ("ERISA"). The Third Circuit stated:

> In determining a party's right to a jury trial it is the procedural and remedial sections of the statute creating the right which must be examined. *See Tull v. United States*, 481 U.S. 412, 107 S.Ct. 1831 [95 L.Ed.2d 365] (1987); *Lorillard v. Pons*, 434 U.S. 575, 584 [98 S.Ct. 866, 872, 55 L.Ed.2d 40] (1978). Where the particular remedial section in the statute provides for only equitable remedies than no right to a jury trial exists. *Lincoln v. Board of Regents of University System of Georgia*, 697 F.2d 928, 934 (11th Cir.) *cert. denied*, 464 U.S. 826 [104 S.Ct. 97, 78 L.Ed.2d 102] (1983) *citing Lehman v. Nakshian*, 453 U.S. 156, 163–164 [101 S.Ct. 2698, 2703, 69 L.Ed.2d 548] (1981). As one learned commentator has pointed out, within a particular statute a right to a jury might exist as to some of the enforcement sections and not as to others. (*See* note 4) 5 J.Moore, Federal Practice § 38–11[7] 1988 ... If the statutory analysis does not reveal a congressional intent to provide a jury trial, the seventh amendment to the United States Constitution must be examined to determine if it commands that a jury trial be provided.

*Id.* at 392–393. The court further declared:

> Even though Cox is not entitled to a jury trial under § 502(a)(3), our analysis is not over because he may still be entitled to a jury trial if his claim for relief under § 502(a)(1)(B) is legal in nature ... It is established law in this circuit that the substance of the pleadings must be examined to determine if the issues raised are triable to a jury. *Laskaris v. Thorn-*

*burgh*, 733 F.2d 260, 264 (3d Cir.), *cert. denied*, 469 U.S. 886 [105 S.Ct. 260, 83 L.Ed.2d 196] (1984).

*Id.* at 394. The Third Circuit in discussing *Keystone* recognized the Eleventh Circuit contention in *Bugher v. Feightner*, 722 F.2d 1356, 1358 (7th Cir.1983) that a § 301 action is a suit for breach of contract seeking damages and, therefore, an action at law triable to a jury. Consequently, we find that the Third Circuit has emphasized the remedial nature of the statutory scheme as instructed in *Curtis.*

■ The Seventh Amendment requires that the legal portions of the § 301 cause of action shall be heard by a jury. We also conclude that a jury is not required to decide the fair representation cause of action because the record reflects that it is closely analogous to that of an unfair labor practice found in the National Labor Relations Act.

■ Third, the defendants seek to have this Court strike Nicely's demand for punitive damages. This Court concludes that punitive damages are improper in a § 301/fair representation case. *See International Brotherhood of Electrical Workers v. Foust*, 442 U.S. 42, 49, 99 S.Ct. 2121, 2126, 60 L.Ed.2d 698 (1979). *See also Lewis v. Local Union 100, Laborers International Union*, 750 F.2d 1368, 1381–82 (7th Cir.1984).

We determine that there exists a genuine issue of fact as to when the statute of limitations on Nicely's claim began to run. Second, we conclude that the Seventh Amendment requires a jury to decide the § 301 cause of action and no jury is required to decide the fair representation cause of action. Third, we will strike the demand for punitive damages found in paragraph 19 of Nicely's complaint. An appropriate order will be filed.

### ORDER

AND NOW, this 30th day of March, 1989, for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that:

(1) The Motions for Summary Judgment filed on behalf of the Defendants, USX and United Steelworkers of America, are DENIED.

(2) The Motion to Strike a Jury Demand filed on behalf of the Defendants is DENIED as to the § 301 cause of action.

(3) The Motion to Strike a Jury Demand filed on behalf of the Defendants is GRANTED as to the fair representation cause of action.

(4) The Motion to Strike the Demand for Punitive Damages is GRANTED.