921 F.2d 745
 136 L.R.R.M. (BNA) 2017, 59 USLW 2418,
117 Lab.Cas. P 10,446
 Mary BROWNLEE, David Coco, Cynthia Landmann, and Palmer
Wade, Appellees,
v.
YELLOW FREIGHT SYSTEM, INC., Appellant,
and
Local 688, International Brotherhood of Teamsters,
Chauffeurs, Warehousemen, and Helpers of America, and Local
600 International Brotherhood of Teamsters, Chauffeurs,
Warehousemen, and Helpers of America.
Mary BROWNLEE, David Coco, Cynthia Landmann, and Palmer
Wade, Appellees,
v.
YELLOW FREIGHT SYSTEM, INC., and Local 688 International
Brotherhood of Teamsters, Chauffeurs, Warehousemen, and
Helpers of America, and, Local 600 International Brotherhood
of Teamsters, Chauffeurs, Warehousemen, and Helpers of
America, Appellant.
 Nos. 88-2663EM, 88-2664EM.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 12, 1990.
Decided Dec. 10, 1990.
 
 Ronald K. Fisher, Chesterfield, Mo., Cary Hammond, rebuttal argument, Clayton, Mo., for appellant.
 Richard Greenberg, St. Louis, Mo., for appellees.
 Before ARNOLD, Circuit Judge, HENLEY, Senior Circuit Judge, and MAGILL, Circuit Judge.
 ARNOLD, Circuit Judge.
 
 
 1
 This interlocutory appeal under 28 U.S.C. Sec. 1292(b) presents the question whether Mary Brownlee, David Coco, Cynthia Landmann, and Palmer Wade will receive a jury trial on their claims against their union and their employer. The answer to that question depends upon whether their claims--that their union did not adequately represent them and that their employer broke its collective-bargaining agreement--require legal rights to be settled. The District Court[1] decided that the plaintiffs were entitled to a jury, and the defendants have taken this appeal before proceeding to trial. We affirm and remand for trial. The plaintiffs' claims present both legal and equitable issues. A jury should hear and decide the legal issues before the trial court considers the equitable questions.
 
 I.
 
 2
 The plaintiffs are members of two locals (No. 600 and No. 688) of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. They worked for Yellow Forwarding Company. In 1986 Yellow Forwarding merged with Yellow Freight System, Inc. The plaintiffs' place of work in St. Louis was eliminated by the merger. They allege that under the terms of their collective-bargaining agreement they were entitled to follow the work to a local Yellow Freight terminal, and be dovetailed into the workforce there on the basis of their seniority at Yellow Forwarding. The plaintiffs were not offered these local jobs, and were instead terminated. They then filed a grievance with the Change-of-Operation Committee established by the collective-bargaining agreement. The Committee has both labor and management representatives, and operates as a forum for binding arbitration of contract disputes. The Committee agreed that the plaintiffs should be offered jobs, with no loss in seniority, but only at out-of-state facilities. It declined to recommend a similar opportunity at the local Yellow Freight operation.
 
 
 3
 After losing in that arbitration proceeding, the plaintiffs filed this action in federal court. Their complaint presents a hybrid claim. They allege that their union violated its judicially created duty to represent their interests fairly in the grievance proceeding. Underlying that allegation is the employees' contention that Yellow Freight violated Sec. 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185, by breaking the collective-bargaining agreement. The plaintiffs sought a variety of remedies: back pay, lost benefits, reinstatement, attorney's fees, and any other relief the Court deemed proper.
 
 
 4
 The plaintiffs sought a jury trial on all the issues in their complaint. In the course of pre-trial motions, the union and Yellow Freight asked the Court to strike that request, arguing that this case was essentially equitable, and therefore should be tried to the Court. The plaintiffs, citing Minnis v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, 531 F.2d 850 (8th Cir.1975), responded that the law in our circuit was to the contrary. They claimed their hybrid action presented legal issues that must be tried before a jury. The District Court denied the motion to strike the request for a jury. In making that decision, the Court relied on Minnis and the United States Supreme Court's familiar Seventh Amendment jurisprudence expansively interpreting the right to trial by jury. At the same time it overruled this motion, however, the Court certified the jury-trial issue for immediate appeal, 28 U.S.C. Sec. 1292(b). In deciding to certify the issue, the Court cited the difference of opinion among other courts on this important question of law.
 
 
 5
 This Court granted the union's and Yellow Freight's motion for an interlocutory appeal, and the case was set for oral argument. After the case was fully briefed and argued before our Court, the United States Supreme Court granted certiorari in a Fourth Circuit case having nearly identical issues and facts: Terry v. Chauffeurs, Teamsters, and Helpers, Local No. 391, 863 F.2d 334 (4th Cir.1988). We ordered this case held in abeyance pending the Supreme Court's resolution of Terry. That opinion came down in late March of this year, --- U.S. ----, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990), and we requested supplemental briefs from the parties on Terry's impact on this case. We have received and reviewed these additional arguments, and are now ready to decide this appeal.
 
 II.
 
 6
 We begin our analysis with the Terry case; it is factually and legally similar to our case, and it is the Supreme Court's most recent word on these questions. In Terry, a group of workers sued their trucking-company employer and their union over a dispute about seniority rights. As in this case, they alleged that their employer had broken the collective-bargaining agreement, and that their union had not fairly represented them during the mandatory grievance proceeding. The workers sought back pay and benefits, reinstatement, and an injunction against any future illegal acts by the employer. They sought a jury trial on all their claims. Before trial, however, the Terry plaintiffs' employer, McLean Trucking, went bankrupt. The company was accordingly dismissed from the suit, and all requests for equitable relief were dropped. The plaintiffs, however, persisted in their demand for a jury to evaluate their claims against their union. As in this case, the plaintiffs' claims in Terry presented hybrid Sec. 301 and fair-representation issues. The District Court granted the union's motion to strike the jury-trial request, finding that no such right exists in fair-representation cases. The Fourth Circuit reversed after an interlocutory appeal, and the Supreme Court affirmed that decision.
 
 
 7
 The Supreme Court held that an employee who "seeks relief in the form of backpay for a union's alleged breach of its duty of fair representation has a right to trial by jury." 110 S.Ct. at 1342. After summarizing the facts, the Court summarized the nature of the employees' claims in this kind of hybrid action: "Whether the employee sues both the labor union and the employer or only one of those entities, he must prove the same two facts to recover money damages: that the employer's action violated the terms of the collective-bargaining agreement and that the union breached its duty of fair representation." 110 S.Ct. at 1344 (citing Del Costello v. Teamsters, 462 U.S. 151, 164-65, 103 S.Ct. 2281, 2290-91, 76 L.Ed.2d 476 (1983)). Turning to the constitutional question, the Court outlined the importance of juries in our scheme of self-government under law. It began with the words of the Seventh Amendment: "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." The Court concluded with a review of its decisions interpreting that constitutional provision.
 
 
 8
 Those cases teach that the right to a jury trial in a statutory action such as this one depends upon the presence of "legal rights and remedies," Curtis v. Loether, 415 U.S. 189, 194, 94 S.Ct. 1005, 1008, 39 L.Ed.2d 260 (1974), that are to be resolved. Deciding whether legal rights are present depends, in turn, on a comparison of the statutory action with actions that existed at common law and in the courts of equity in 18th-century England. The point of the comparison is to find the closest historical analog to the modern statutory action. Deciding whether legal remedies are sought depends upon whether the remedy requested is legal or equitable in nature. Ross v. Bernhard, 396 U.S. 531, 538 n. 10, 90 S.Ct. 733, 738 n. 10, 24 L.Ed.2d 729 (1970). As the Court has recently emphasized, the second inquiry is the more important of the two in determining the ultimate issue: whether the statutory action involves settling legal rights and therefore requires a jury's participation. Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 109 S.Ct. 2782, 2790, 106 L.Ed.2d 26 (1989).
 
 
 9
 The members of the Terry Court disagreed over the closest historical analog to the plaintiffs' hybrid Sec. 301/duty-of-representation action. Justice Marshall, joined by three other justices, found a close fit between a beneficiary's equitable suit against a faithless trustee and the fair-representation part of plaintiffs' claims. He rejected both the union's contention that the closest analog was an action to vacate an arbitration award and the employees' contention that an action at law for attorney malpractice was the nearest pre-merger suit. This, however, was not the end of Justice Marshall's analysis. He also concluded that the closest historical analog to the Sec. 301 aspect of the plaintiffs' claim was a breach-of-contract claim--an action at law. The first stage of the Court's Seventh Amendment analysis, the search for an analogous pre-merger cause of action, thus yielded no clear answer. Instead, as Justice Marshall put it, the case remained in "equipoise" between legal and equitable issues.[2] 110 S.Ct. at 1347.
 
 
 10
 Justice Marshall, now speaking for a six-justice majority, then took up the remedy question. The Court noted that the employees' request for backpay and benefits was presumptively legal in nature: it was a claim for compensatory damages. It rejected the union's argument that the remedy was merely restitutionary. The remedy was aimed, after all, at the union and not the employer for money wrongly withheld. The Court went on to also hold that the requested relief was not so intertwined with equitable remedies that it could be decided by the chancellor. After "[c]onsidering both parts of the Seventh Amendment inquiry ...," the Court concluded that the employees were "entitled to a jury trial on all issues presented in their suit." 110 S.Ct. at 1349.
 
 III.
 
 11
 We reason from Terry. If this case were factually and legally identical to Terry, there would be no question about the employees' right to a jury trial on their claims. There are, however, important differences. The employer, Yellow Freight, is still a party to this action. The contract rights between the employees and Yellow Freight have been determined by a binding arbitration; that decision must be vacated if relief is to be granted against Yellow Freight. In addition, reinstatement, a form of equitable relief, is sought by the plaintiffs. Further, the damages in the amount of backpay and benefits are sought not only from the union, but also from Yellow Freight. The question, then, is whether these differences require a result different from Terry in our Seventh Amendment analysis.
 
 
 12
 We hold that they do not. It is clear that the plaintiffs' claims against their employer involve a traditionally equitable suit and seek equitable relief. Terry teaches, however, that their claims against the union for damages require that legal rights be "determined and ascertained." Parsons v. Bedford, 3 Pet. 433, 447, 7 L.Ed. 732 (1830) (Story, J.). The plaintiff employees' hybrid cause of action really involves two claims: a duty-of-fair-representation action for damages against the union, and a Sec. 301 action for monetary relief and for reinstatement against the employer. We begin with the employees' claim against the union. Here Terry is conclusive. "Considering both parts of the Seventh Amendment inquiry, we find that [plaintiffs] are entitled to a jury trial on all the issues presented ..." in their duty-of-fair-representation claim. Terry, 110 S.Ct. at 1349.
 
 
 13
 The employees' action against Yellow Freight is, however, a claim of a different kind. Considering the closest historic cause of action and the nature of relief requested, it is clear that this claim is one "where equitable rights alone [are] being recognized, and equitable remedies [are] administered." Parsons, 3 Pet. at 447. We agree with the appellants that the closest historical analogy here is to a suit in equity to vacate an arbitration award. Prevailing in that effort is a precondition to any recovery against Yellow Freight. See United Parcel Serv., Inc. v. Mitchell, 451 U.S. 56, 62, 101 S.Ct. 1559, 1563-64, 67 L.Ed.2d 732 (1981) (accepting this analogy for statute-of-limitations purposes). Moreover, the remedy that these employees seek against their former employer is also equitable, rather than legal, in nature. The plaintiffs do not dispute that reinstatement would be equitable relief. The defendants press further, however, arguing that any damages for back pay and benefits for which they might ultimately be responsible are also equitable rather than legal. We agree that any monetary relief ultimately assessed against Yellow Freight would be equitable rather than legal. In sum, both the claims pressed and the relief sought against Yellow Freight lead us to conclude that the plaintiffs would not be entitled to a jury if the employer were the only defendant, or if no monetary relief were sought against the union.
 
 
 14
 There are two defendants here, however, the union and the employer, and damages in the form of back pay and benefits are sought from the union. Where legal and equitable claims are joined in the same complaint, and where there are common issues of fact, the normal practice is to try both claims to a jury. See Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 510-11, 79 S.Ct. 948, 956-57, 3 L.Ed.2d 988 (1959); Dairy Queen, Inc. v. Wood, 369 U.S. 469, 479, 82 S.Ct. 894, 899-901, 8 L.Ed.2d 44 (1962); Ross, 396 U.S. at 537-38, 90 S.Ct. at 737-38. In this way, the jury's verdict will conclusively settle these common issues, and only issues peculiar to the equitable claim will be left to be decided by the judge. In the usual case, the parties to the legal and equitable claims will be identical. The Ross line of cases requires that the legal claim be tried first, to the jury. Facts decided by the jury will be conclusively established as between the parties under the doctrine of collateral estoppel.
 
 
 15
 How does this analysis change when the plaintiff possesses both a legal and an equitable claim, but the claims run against different defendants? Plaintiffs have a right to a jury trial against the union. The jury would decide whether the union failed in its duty of fair representation, whether there had been a breach of the collective-bargaining agreement, and (assuming answers to these questions favorable to plaintiffs) what amount of back pay and benefits is necessary to make plaintiffs whole. If the plaintiffs lose before the jury on any issue determinative of liability, they would be bound by that result, and the case would be over. The employer, not a party to the unsuccessful legal claim, would still get the benefit of the jury's decision rejecting it, under the doctrine of defensive nonmutual collateral estoppel.
 
 
 16
 But what if the plaintiffs win against the union before the jury? Could the employer insist on relitigating the issues, either in a subsequent proceeding, or simultaneously in the same courtroom, with the judge deciding the issues of fact for purposes of the equitable claim against the employer? We think the Seventh Amendment would allow either a negative or an affirmative answer to this question. Allowing relitigation would not violate the Seventh Amendment under the reasoning of the Ross line of cases. As a non-party to the legal claim, the employer would not be bound, under normal principles of issue preclusion, by plaintiffs' victory against the union. On this reasoning, plaintiffs could win against the union, but lose against the company, and the judge could disagree (for purposes of the equitable claim against the company) with the jury's verdict as to the facts.
 
 
 17
 Such a result, however, though not unconstitutional, would be impractical and confusing, difficult to handle as a matter of judicial administration, and likely to produce feelings of incongruity and injustice among the parties. The better course is to try all common issues, with respect to both defendants, to the jury. The Seventh Amendment requires this result with respect to the defendant union, and we so hold, with respect to the defendant employer, as a matter of nonconstitutional decisional law. There is no constitutional right to a nonjury trial, Beacon Theatres, Inc., 359 U.S. at 510, 79 S.Ct. at 956-57, and the employer would suffer no legally demonstrable prejudice. If the jury decides against the plaintiffs, the case will be over. If it decides for them, the judge will still have to determine whether they should receive the special equitable remedy of reinstatement. Normally reinstatement would follow as a matter of course, but special equitable factors could counsel the judge to deny it.
 
 
 18
 The order of the District Court, denying defendants' motion to strike plaintiffs' jury demand, is affirmed, and the cause is remanded for further proceedings consistent with this opinion.
 
 
 19
 It is so ordered.
 
 
 
 [1]
 The Hon. Clyde S. Cahill, United States District Judge for the Eastern District of Missouri
 
 
 [2]
 Justice Stevens, disagreeing with the plurality's analysis here, found the closer historical analog to be the legal malpractice action. He nonetheless concurred in the judgment. Justice Brennan, in his concurrence, suggested abandoning the search for an analogous historical action as ultimately fruitless. The dissent, written by Justice Kennedy and joined by Justices O'Connor and Scalia, agreed with the plurality that the best analogy was to the equitable suit against a trustee. But the dissenters thought that should be the end of the case. The employees, the dissenters reasoned, were not entitled to a jury in their essentially equitable duty-of-fair-representation case