Alonzo **DERINGER,** Plaintiff–Appellant,

v.

**COLUMBIA TRANSPORTATION DIVISION, OGLEBAY NORTON CO. and District 2, Marine Engineers Beneficial Association,** Defendants–Appellees.

No. 87–3392.

United States Court of Appeals, Sixth Circuit.

Argued May 19, 1988.

Decided Jan. 30, 1989.

Dennis P. Strong (argued), Bayford, Senerius, Strong & Hershman, Toledo, Ohio, for plaintiff-appellant.

Daniel A. Ward, David L. Parham, T. Merritt Bumpass, Jr. (argued), Thompson, Hine and Flory, Glenn R. Schmitt, Cleveland, Ohio, for defendants-appellees.

Gerald B. Lackey, Lackey, Nusbaum, Phillips & Harris, Toledo, Ohio, Joan Torzewski (argued), Toledo, Ohio, for Marine Engineers.

Before: KEITH and WELLFORD, Circuit Judges; and HORTON *, Chief District Judge.

---

\* The Honorable Odell Horton, Chief United States District Judge for the Western District of Tennessee, sitting by designation.

1. Engineers are licensed by the Coast Guard in four ratings: Chief Engineer, First Assistant Engineer, Second Assistant Engineer, and Third Assistant Engineer. At each level of licensure, an engineer can perform his job requirements

WELLFORD, Circuit Judge.

Plaintiff Alonzo Deringer appeals the district court's judgment for his employer, Columbia Transportation Division of Oglebay Norton Co. ("Columbia"), and his union, District 2, Marine Engineers Beneficial Association ("MEBA"), in this action brought pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Deringer alleged that a violation of the collective bargaining agreement ("CBA") between Columbia and MEBA occurred when another employee with a higher level of licensure as an engineer, but with less continuous service time with Columbia, "bumped back" Deringer from a position as Second Assistant Engineer to a position as Third Assistant Engineer. He also alleged that MEBA breached its duty of fair representation by failing to pursue to arbitration his claim of contract breach. We conclude that Deringer's § 301 claim must fail. We also consider the interesting question, one of first impression before this court: Does a plaintiff in a hybrid § 301/unfair representation action enjoy a right to jury trial?

## I. Facts

Deringer has been employed by Columbia since 1956 and has been a member of MEBA since 1966. He holds a Second Assistant Engineer's license [1] for steam vessels. Beginning in 1979, Columbia was forced by a decline in the steel industry to reduce the number of vessels it operated on the Great Lakes. As a result of this reduction in forces, on the seniority lists that Columbia published in February 1980, Deringer was "bumped" to a lower position on the list for Second Assistant Engineers by two employees who had been moved from the bottom of the First Assistant Engineer

and the jobs in all lower rated positions. During the late 1960s, as a result of the manpower shortage caused by the Vietnam War, Deringer held a temporary First Assistant Engineer license, which was rescinded in 1970. At no other time has Deringer held a license above the level of Second Assistant Engineer for steam vessels.

list to the top of the Second Assistant Engineer list. In April 1980 Deringer wrote two letters to a MEBA vice president complaining that the two employees bumped down from the First Assistant Engineer list had less continuous service time with Columbia than he did and therefore should not be senior to him on the Second Assistant Engineer list. Timothy Mohler, MEBA's vice president, responded to each of Deringer's letters with letters explaining the operation of the seniority system in the context of a reduction in forces. Specifically, in April of 1980, Mohler stated:

> Seniority on the Great Lakes is such that all chiefs are senior to all firsts, all firsts are senior to all seconds and all seconds are senior to all thirds. In this case, there was a fleet reduction which resulted in the two men in question being moved from the bottom of the firsts list to the top of the seconds list. This is entirely in line with the contract and the Lakes-wide system of seniority.

On the June 1980 seniority list for Second Assistant Engineers, Deringer again was bumped down by two persons who were moved from the bottom of the First Assistant Engineer list to the top of the Second Assistant Engineer list. Later in the summer of 1980, Columbia further reduced the number of its vessels in operation, and another engineer was bumped from the First to the Second list. As a result, Deringer was bumped from the bottom position on the Second Assistant Engineer list to the top position on the Third Assistant Engineer list. Plaintiff then filed a grievance with MEBA to protest this latest move. MEBA investigated the complaint, but found that Columbia's practice was consistent with the CBA and Lakes-wide practice. As a result, MEBA determined Deringer's grievance was without merit and withdrew it from the grievance process. Deringer bases his hybrid § 301/unfair representation suit on Columbia's construction of its seniority lists and on MEBA's refusal further to pursue his grievance.

MEBA had organized employees at approximately twenty other shipping companies operating on the Great Lakes prior to organizing the employees at Columbia in 1966. Since 1956, employers and MEBA have conducted contract negotiations on a pattern basis. MEBA first negotiates a contract with the "big three" steel company shippers (U.S. Steel, Bethlehem Steel, and Inland Steel), and this contract serves as the contract pattern for independent companies. Contract negotiations with the independent companies are limited to peculiarly local issues. The Columbia contract language regarding placement on seniority lists, which is at issue in this case, is the same as in all of MEBA's contracts with Great Lakes shipping companies.

> The position of each Employee in each [seniority] list will be determined by his length of service in the particular rating.
>
> When vacancies occur, and a Licensed Officer's progression from one rating list to the next higher shall be from the top of his immediate list to the bottom of the next higher rating list.

Article XIV, § 2. Likewise, all the companies' contracts contained the same language regarding decreases in forces:

> (a) Whenever forces are decreased the following factors as listed below shall be considered; however, only when both factors A and B are relatively equal between eligible Employees shall length of continuous service be the determining factor.
> A. Ability to perform the work.
> B. Physical fitness.
> C. Appropriate license for rating.
> D. Continuous service.

Article XIV, § 9. No provision of the CBA, however, specifically expresses how § 9 should be applied or how § 9's "continuous service" provision may be harmonized with the "length of service in the particular rating" requirement of § 2.

II. *Right to Jury Trial*

Deringer filed a request for a jury trial with respect to his cause of action; it was denied based on the Supreme Court's language in *United Parcel Service v. Mitchell,* 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981), and *DelCostello v. Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476

(1983). The district court reasoned that the relief requested by Deringer was equitable in nature; and that in light of the complex federal statutory schemes underlying labor law, federal labor policy would not be furthered by jury trial of hybrid § 301 claims. On appeal, Deringer argues that the district court committed reversible error when it denied his request. We have not had occasion to address the seventh amendment right to jury trial in a hybrid § 301 suit previously. Without establishing a per se rule for all such hybrid § 301 suits, in the particular circumstances of this case, we conclude that the district court's denial of Deringer's request for a jury trial was proper, at least with regard to the fair representation issue.

The right to jury trial is preserved constitutionally in "Suits at common law, where the value in controversy shall exceed twenty dollars." This seventh amendment guaranty of a right to jury trial applies in an action to enforce a statutory right "if the statute creates legal rights and remedies, enforceable in an action for damages in the ordinary courts of law." *Curtis v. Loether*, 415 U.S. 189, 194, 94 S.Ct. 1005, 1008, 39 L.Ed.2d 260 (1974). Applicability of the seventh amendment, however, depends on "the nature of the issue to be tried rather than the character of the overall action." *Ross v. Bernhard*, 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970) (footnote omitted). Thus, for purposes of the instant case, it is the characterization of the individual issues subsumed within a hybrid § 301 action that matters, not the characterization of the overall action. *Wood v. International Brotherhood of Teamsters*, 807 F.2d 493, 505 n. 1 (6th Cir.1986) (Contie, J., concurring), *cert. denied*, —— U.S. ——, 107 S.Ct. 3232, 97 L.Ed.2d 738 (1987). In determining the "legal" nature of an issue, a court should consider (1) the premerger custom with reference to such questions, (2) the remedy sought, and (3) the practical abilities and limitations of juries. *Ross*, 396

U.S. at 538 n. 10, 90 S.Ct. at 738 n. 10. We have held that the factor regarding the nature of the relief sought should be the chief focus in resolving a seventh amendment question. *Hildebrand v. Board of Trustees of Michigan State University*, 607 F.2d 705, 708 (6th Cir.1979), *cert. denied*, 456 U.S. 910, 102·S.Ct. 1760, 72 L.Ed. 2d 168 (1982).

Other courts that have considered the jury trial question in the context of § 301 and/or unfair representation suits have reached various results. *See, e.g., Leach v. Pan American World Airways*, 842 F.2d 285 (11th Cir.1988) (finding no right to jury trial on fair representation claim; rejecting continued viability of *Cox v. C.H. Masland & Sons, Inc.*, 607 F.2d 138 (5th Cir.1979); *Quinn v. DiGiulian*, 739 F.2d 637 (D.C. Cir.1984) (finding right to jury trial on fair representation claim; *Minnis v. UAW*, 531 F.2d 850 (8th Cir.1975) (finding right to jury trial on fair representation claim). We find none of these cases, however, controlling under the circumstances of this case.[2] The district courts in this circuit also have disagreed on the issue. *Compare Chrysler Workers Ass'n v. Chrysler Corp.*, 663 F.Supp. 1134 (N.D.Ohio 1986) (finding no right to jury trial in hybrid § 301 suit), *aff'd*, 834 F.2d 573 (6th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 2017, 100 L.Ed.2d 604 (1988) *with Grider v. Monin*, 637 F.Supp. 324 (M.D.Tenn.1986) (finding right to jury trial on fair representation claim brought under the Railway Labor Act).

In *Wood v. International Brotherhood of Teamsters*, 807 F.2d 493 (6th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 3232, 97 L.Ed.2d 738 (1987), a hybrid § 301 action tried to a jury, the panel majority did not find it necessary to reach the jury trial question in its opinion, but Judge Contie, in his concurrence, nevertheless analyzed the issue. Judge Contie considered the individual issues in a hybrid § 301 action—whether the union breached its duty of fair repre-

---

**2.** In *Leach* the plaintiff employees sought to use the fair representation claim to obtain vacation of an arbitration award favoring the employer. In *Quinn* the plaintiff sued only his union, and not his employer; thus, *Quinn* does not present a hybrid § 301 suit. In *Minnis* the plaintiff sought solely a traditional legal remedy—compensatory and punitive damages.

sentation and whether the employer breached the collective bargaining agreement—to determine whether the issues were legal or equitable in nature. He concluded that the fair representation issue was equitable in nature because the plaintiffs primarily sought a clearly equitable remedy: the setting aside of an arbitration award. 807 F.2d at 504. Judge Contie found that the breach of contract issue, however, was legal in nature and triable to a jury. *Id.* Based on the hybrid character of § 301 action, he concluded that only if the court, as trier of fact, concluded that the arbitration award had to be set aside because the union had breached its duty of fair representation, should the breach of contract claim subsequently have been tried to a jury. *Id.* at 505.[3]

■ Application of Judge Contie's reasoning leads to a similar result in the instant case. Deringer does not seek to set aside an arbitration award as part of his fair representation claim against MEBA. Instead, Deringer asserts in his complaint that MEBA wrongfully refused to pursue and arbitrate his grievance regarding his position on Columbia's seniority lists. The only prayer for relief applicable to MEBA in Deringer's complaint, however, was his request that the court

> order the defendants to reinstate the plaintiff in the proper place on the seniority lists as to continuous time of service as set forth in the collective bargaining agreement; that the Court order a declaratory judgment as to the proper procedure in Article XIV, Section 9, Decrease in Forces; that the Court order a permanent injunction enjoining the defendants from maintaining or continuing the policies and practices of denying, abridging, withholding, and limiting the rights of the plaintiff and the class he seeks to represent by the discriminatory violation of the collective bargaining agreement as set forth above; declare that the policies and practices complained of herein violate 29 U.S.C. § 185A and

623; that the Court order the defendants to pay the plaintiff his costs herein including reasonable attorney fees and to all relief to which the plaintiff may appear to be entitled and to assure compliance with all orders of the Court.

Deringer does not expressly seek any monetary damages against the union, and the phrase "all relief to which the plaintiff may appear to be entitled" does not transform the prayer for purely equitable relief into a legal claim. *Cf. Harris v. Richards Manufacturing Co., Inc.,* 675 F.2d 811, 815 (6th Cir.1982) (catchall phrase "and such other and further relief as may be deemed necessary and proper" does not constitute prayer for legal relief). For purposes of borrowing a state statute of limitations in a hybrid § 301 suit, claims asserting a union's breach of its duty of fair representation are most closely analogous to unfair labor practice charges brought before the NLRB. *See DelCostello v. Teamsters,* 462 U.S. 151, 170–71, 103 S.Ct. 2281, 2293–94, 76 L.Ed.2d 476 (1983); *cf. NLRB v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893 (1937). Therefore, because Deringer's claims against MEBA for breach of its duty of fair representation were equitable in nature and sought purely equitable remedies, the district court properly denied Deringer's request for a jury trial with respect to the fair representation issue.

Under Judge Contie's analysis in *Wood,* it is arguable that the district court should have granted Deringer's jury request with regard to his claim against Columbia for breach of the CBA. In addition to the equitable relief detailed above, Deringer requested the district court to order his employer "to reimburse the plaintiff in full for any and all wages and benefits he has lost and any and all expenses which he has incurred as a direct result of this defendant's discriminatory violation of the collective bargaining agreement." We have previously concluded that the remedy of lost

---

**3.** The court in *Wood* held that the arbitration award could not be set aside because any breach of duty by the union would not have tainted the arbitrator's decision. Although the

court's opinion did not reach the jury trial issue, it stated in a footnote that it "ha[d] no disagreement with [Judge Contie's] analysis." 807 F.2d at 504 n. 3.

wages (back pay) is considered an equitable remedy. *See Harris*, 675 F.2d at 815 n. 2. The prayer for "any and all expenses ...," however, may be seen as constituting a claim for compensatory damages—the traditional legal remedy—against the employer. Before a court properly reaches the issue of the employer's contract breach, the plaintiff in a hybrid § 301 action first must succeed in showing the union breached its duty of fair representation. *Wood*, 807 F.2d at 504 (Contie, J., concurring). Error, if any, in the district court's denial of Deringer's request for a jury trial with regard to his claim against Columbia was therefore harmless because the court, as trier of fact, first determined that MEBA had not breached its duty of fair representation.

### III. *Duty of Fair Representation*

Even if we had decided that the district court's denial of Deringer's request for a jury trial on the fair representation issue was erroneous, we still would affirm the district court's judgment for defendants in this case on the grounds that Deringer failed to present sufficient evidence of MEBA's breach of its duty of fair representation. "Error in striking a demand for jury trial is harmless if a directed verdict for the defendant would have been warranted." *Laskaris v. Thornburgh*, 733 F.2d 260, 264 (3d Cir.), *cert. denied*, 469 U.S. 886, 105 S.Ct. 260, 83 L.Ed.2d 196 (1984); *see also In re N–500L Cases*, 691 F.2d 15, 32 (1st Cir.1982); *Monroe Auto Equipment Co. v. Heckethorn Manufacturing & Supply Co.*, 332 F.2d 406, 412 (6th Cir.), *cert. denied*, 379 U.S. 888, 85 S.Ct. 160, 13 L.Ed.2d 93 (1964).

■ Deringer bases his claim against MEBA on his allegation that the union "arbitrarily and in a discriminatory manner" refused to process his grievance regarding his bump back to the position of Third Assistant Engineer. In his letter withdrawing Deringer's grievance, MEBA vice-president Mohler stated that the grievance's withdrawal was "based on the fact that the positions of these men are in accordance with the rules followed virtually Lakes-wide regarding seniority." This basis for withdrawing the grievance is consistent with Mohler's response to Deringer five months earlier that his first bump back was "entirely in line with the contract and the Lakes-wide system of seniority." These statements by Mohler provide clear evidence that MEBA withdrew the grievance because of its perceived lack of merit.

In order to succeed on a fair representation claim, a plaintiff must make a showing that the union acted in bad faith or handled the grievance in a perfunctory or arbitrary manner. *See Ruzicka v. General Motors Corp.*, 649 F.2d 1207, 1211–12 (6th Cir. 1981); *Dill v. Greyhound Corp.*, 435 F.2d 231 (6th Cir.1970), *cert. denied*, 402 U.S. 952, 91 S.Ct. 1622, 29 L.Ed.2d 122 (1971). Deringer has not successfully impeached the testimony of MEBA officers finding Columbia's action in bumping plaintiff back to be consistent with the CBA. In fact, Deringer admitted at trial that his only problem with the union was that its interpretation of the CBA differed from his. Based on the record before us, we do not find sufficient evidence to allow Deringer's unfair representation claim to go to a jury. The district court, therefore, would have been required to grant a directed verdict for MEBA had the action been tried to a jury. Accordingly, assuming *arguendo* that the district court erred in denying Deringer's jury trial request, that error was harmless and does not require reversal.[4]

In sum, we conclude that the district court properly found, under the circumstances of this case, that Deringer's fair representation claim against MEBA was not triable to a jury. We find, moreover, that Deringer failed to present evidence that could lead reasonable minds to find

---

**4.** Because Deringer has failed completely to demonstrate that MEBA breached its duty of fair representation in handling his grievance, we need not review the district court's finding on the breach of contract issue, which arguably should have been tried to a jury. In order to avoid the finality provisions of the CBA's grievance process and sue his employer for breach of the labor contract, Deringer must first show that MEBA's unfair representation seriously undermined the integrity of the grievance process. *See Ruzicka*, 649 F.2d at 1213.

that the union breached its duty of fair representation. For these reasons, we affirm the judgment of the district court for defendants MEBA and Columbia.