**UNITED TRANSPORTATION UNION, LOCAL 74, Plaintiff–Appellant,**

v.

**CONSOLIDATED RAIL CORP., Defendant,**

**United Transportation Union, Defendant–Appellee.**

No. 88–3770.

United States Court of Appeals, Sixth Circuit.

Argued April 17, 1989.

Decided July 31, 1989.

Rehearing and Rehearing En Banc Denied Oct. 16, 1989.

Thomas J. Murray, Jr. (argued), Murray & Murray, Sandusky, Ohio, for plaintiff-appellant.

Clinton J. Miller, III (argued), Office of General Counsel, United Transp. Union, Cleveland, Ohio, for defendant-appellee.

Before WELLFORD and GUY, Circuit Judges; and PECK, Senior Circuit Judge.

JOHN W. PECK, Senior Circuit Judge.

This duty of fair representation case under the Railway Labor Act, 45 U.S.C. § 151 et seq., was resolved in favor of defendant United Transportation Union ("UTU") in a bench trial, following the district court's grant of UTU's motion to strike the jury demand made in plaintiff United Transportation Union, Local 74's ("Local 74") Second Amended Complaint. For the reasons stated below, we conclude that Local 74 was entitled to the jury trial that it requested. We further hold that there are facts upon which reasonable jurors could conclude both that it would have been futile for Local 74 to continue to pursue internal union remedies and that UTU breached its duty of fair representation; therefore, a directed verdict would not have been appropriate and denial of Local 74's demand for a jury trial was not harmless error. See, e.g., Laskaris v. Thornburgh, 733 F.2d 260, 264 (3d Cir.), cert. denied, 469 U.S. 886, 105 S.Ct. 260, 83 L.Ed.2d 196 (1984); Cox v. C.H. Masland & Sons, Inc., 607 F.2d 138, 145 (5th Cir.1979).

## I. Background

On April 1, 1976, eight separate bankrupt railroads, including Erie Lackawanna ("EL") and Penn Central ("PC"), were merged by Congress to form Consolidated Rail Corporation (Conrail),[1] a multi-state rail carrier operating primarily in the northeast quadrant of the United States, under the Regional Railroad Reorganization Act ("3R Act"), 45 U.S.C. §§ 701 et seq.[2] UTU is a national labor organization engaged primarily in representing railroad employees for the purpose of collective bargaining throughout the United States pursuant to the Railway Labor Act, 45 U.S.C. §§ 151 et seq. Local 74 is a local constituent of UTU and represents, among others, the former EL employees who worked as trainmen (conductors, brakemen and switchmen) and firemen at the Marion, Ohio yard and on the road. When Conrail came into being, it consolidated former PC and EL yards in the Ohio cities of Marion, Akron, Dayton and Mansfield. As a result of the merger, the number of switchmen

---

1. Conrail was dismissed as a party to this action on December 20, 1985.

2. The original 3R Act has been modified and was partly repealed in 1981 by the Northeast Rail Service Act of 1981, 95 Stat. §§ 643–703.

needed in EL's former yard operations in Marion dropped immediately from 36 to 9, and eventually down to 3. As of the date of trial, the EL workers had not obtained a single yard job in any Conrail switching yard to which their work was allegedly diverted. However, they did get some road work three years after Conrail's formation.

Local 74 asserts that most of this lost yard work was diverted to former PC switching yards in other Ohio cities. Immediately upon Conrail's formation, the entire main line of the former EL between Chicago and Marion was abandoned; Local 74 claims that the road and yard work that was done at the Marion yard prior to the merger was diverted to the east/west routes of the former PC railroad. Local 74 further maintains that the majority former PC workers controlled UTU and precluded minority former EL workers from obtaining the equity due them in preserving their former work under federal law, existing contracts, and the UTU constitution.

The Act under which Conrail was organized provided that Conrail would initially assume all existing collective bargaining contracts and then negotiate new ones. 45 U.S.C. § 772(b) (1976) (repealed 1981). The labor organizations were to negotiate with Conrail as to the procedure for determining seniority, and, "to the extent possible, preserve [workers'] prior seniority rights." 45 U.S.C. § 774(b) (1976) (repealed 1981). Workers with seniority on "the lines, properties, or facilities acquired" were to have prior seniority roster rights on those lines, properties, or facilities. 45 U.S.C. § 774(a) (1976) (repealed 1981). UTU and Conrail negotiated a bargaining agreement, effective April 1, 1976. All employees were merged into a "dove-tailed" seniority roster according to date of hire by the original railroads. Each employee was given an overriding prior right to positions in the operating area of his former railroad. *See Ratkosky v. United Transportation Union*, 843 F.2d 869, 871–72 (6th Cir.1988). The agreement also stated that:

> When assignment, allocation, reallocating, reassignment or consolidation of work ... takes place, the parties will meet to determine an equitable allocation of work involved on a prior right seniority basis. The allocations will be determined on the basis of one or more of the work measurement factors listed below, but not limited to such factors:
> 1. Engine hours.
> 2. Cars dispatched.
> 3. Train miles and/or car miles.
> 4. Track miles.
> The corporation will furnish all available data necessary for such allocation.

Article 90 of UTU's Constitution also dealt with employee rights following a permanent diversion of work from one carrier to another, by providing that a "General Committee of Adjustment" would arrange a "fair and equitable division of the work," which would preserve prior seniority rights to the extent possible.

UTU management operates on three levels. At the local level, a local chairperson handles members' business, including employee grievances. There have been two or three local chairpersons for Local 74 at all times since 1976. At the intermediate level, there are several General Committees that are authorized to bargain collectively on behalf of their respective locals. At the third, or international, level, there are a president and several vice presidents, and a Board of Appeals, which is the highest body for resolution of internal disputes. Article 75 of the UTU Constitution provides with respect to appeals that "a subordinate body may appeal an action or decision against it to an appropriate Board of Appeals, provided such appeal is filed with the General Secretary and Treasurer within ninety (90) days from the date the action or decision occurred."

Immediately following the merger in 1976, UTU assigned a representative to pursue the former EL workers' rights. The representative promptly asserted the workers' rights, seeking first to show road equity on the theory that establishing road equity would automatically show a right to yard equity. A temporary agreement for road work out of Toledo, Ohio was obtained, but was resisted by UTU General Chairman Swert, who claimed that Local 74

could show no equity in the merged system because it could not identify the particular trains that had been diverted. UTU's vice president rejected Swert's view, finding that some portion of the former EL work had been diverted to PC yards. This decision was appealed to the Union Board of Appeals by representatives of several former PC groups; in denying the appeal the Board stated that there is no such thing as an "identifiable" train, so equity must be determined on other bases. It appears that some road jobs for EL workers resulted from this sequence of events (ending in 1979); however, no yard jobs were obtained and Local 74 asserts that, unbeknownst to it or the workers (and contrary to the assurances of their appointed representative), yard jobs for former EL employees had not even been negotiated with UTU at that point. Local 74 contends that the availability of reliable data for determining an equity claim declined as time elapsed.

In 1979, Chairman Swert was assigned by UTU as Local 74's committee representative. The employees continued to pursue their claims. In 1981, Local 74 representatives pressed UTU with their claim for yard work for the former EL workers. Vice-president J.R. Wells was assigned to the dispute. In October 1981, Wells reported the impossibility of establishing the exact location of any group's equity, and recommended simply merging seniority rosters. The UTU president did not act on this recommendation, but rather referred Local 74 back to Swert and the PC representatives, dismissing Wells from any duties in relation to the dispute. In 1982, Local 74's counsel wrote a letter on behalf of Local 74 to the UTU president requesting a dovetail of seniority rosters or other equitable remedy for the former EL yard workers. The

president responded by again referring the matter back to Swert. Two months later, Local 74 filed this action.

Local 74's Second Amended Complaint set forth numerous allegations of arbitrary, discriminatory and bad faith conduct by UTU in failing to respond to Local 74's inquiry concerning yard jobs. In its prayer for relief, Local 74 requested compensatory and punitive damages, as well as "an injunction ordering and requiring defendants to immediately take all reasonable and necessary steps to obtain for plaintiffs a fair and equitable division of all former EL work which has been diverted since April 1, 1976 to former PC terminals." Local 74 concedes that compensatory damages are mitigated to the extent former EL workers received any monthly displacement allowances between 1976 and 1981 under 45 U.S.C. § 775(b) (1976) (repealed 1981).[3]

## II. Right to Jury Trial

There is a conflict among the circuits as to the right to a jury trial in the context of breach of duty of fair representation cases in which legal remedies are sought.[4] The unchallenged rule prior to two Supreme Court rulings, *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981) and *Del-Costello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), was that under *Curtis v. Loether*, 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974) there existed a right to trial by jury in such cases. *See Cox v. C.H. Masland & Sons, Inc.*, 607 F.2d 138, 143 (5th Cir.1979); *Minnis v. UAW*, 531 F.2d 850, 853 (8th Cir.1975). A case decided after 1983 but not considering the potential effect of *Mitchell* and *DelCostello* reached

---

**3.** Under 45 U.S.C. § 775(b) ("Title V") (1976) (repealed 1981), a railroad worker with more than five years' experience who lost his job was entitled to a monthly cash payment until he reached the age of 65. Title V was replaced by Title VII, 45 U.S.C. § 797 (1982), which provided a displaced worker with benefits not to exceed $20,000 over his lifetime.

**4.** The issue has been examined in cases in which the defendant union's duty of fair representation arose in actions concerning both § 301 of

the Labor Management Relations Act, 29 U.S.C. §§ 141 *et seq.*, and the Railway Labor Act, 45 U.S.C. §§ 151 *et seq.* Courts have refused to distinguish between the two acts for purposes of fair representation suits. *See Leach v. Pan American World Airways*, 842 F.2d 285, 287 n. 2 (11th Cir.1988) (citations omitted); *Roscello v. Southwest Airlines Co.*, 726 F.2d 217, 221 (5th Cir.1984) (citations omitted). Therefore, we will consider cases brought pursuant to either act to have similar precedential effect.

the same result. *See Roscello v. Southwest Airlines Co.*, 726 F.2d 217, 220 (5th Cir.1984). The eleventh circuit has decided that the recent Supreme Court rulings undermine the analysis behind the former rule and compel the denial of any right to a jury trial in a duty of fair representation case. *Leach v. Pan American World Airways*, 842 F.2d 285, 290–91 (11th Cir.1988). Conversely, two other circuits considering the influence of *Mitchell* and *DelCostello* have determined that the issue addressed in those cases did not significantly help in making the legal/equitable characterization that is essential to resolution of the jury issue. These courts came to the conclusion that litigants have a right to jury trial in duty of fair representation cases in which legal remedies are sought. *Terry v. Chauffeurs, Teamsters & Helpers, Local 391*, 863 F.2d 334, 339 (4th Cir.1988); *Quinn v. DiGiulian*, 739 F.2d 637, 646 (D.C.Cir.1984). Because we agree that the Supreme Court cases have little bearing on the nature of duty of fair representation cases for seventh amendment purposes, and because we are persuaded that the character of this action is legal, we join these latter circuits in concluding that there is a right to trial by jury in this case.

■ The seventh amendment to the United States Constitution states that, "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved...." The seventh amendment applies if an "action involves rights and remedies of the sort typically enforced in an action at law." *Curtis v. Loether, supra*, at 195, 94 S.Ct. at 1009. Thus, the seventh amendment covers all suits that are not of equity or admiralty jurisdiction. *Id.* at 193, 94 S.Ct. at 1008; *Ross v. Bernhard*, 396 U.S. 531, 533, 90 S.Ct. 733, 735, 24 L.Ed.2d 729 (1970); *Parsons v. Bedford*, 28 U.S. (3 Pet.) 433, 446–47, 7 L.Ed. 732 (1830). Whether there is a right to jury trial in a particular case depends on the nature of the issue to be tried rather than the character of the overall action. *Ross* at 537–38, 90 S.Ct. at 737–38. Consequently, the right to a jury trial on legal issues must be preserved in a case presenting both legal

and equitable issues. *See Hildebrand v. Board of Trustees of Michigan State University*, 607 F.2d 705, 707 (6th Cir. 1979), *cert. denied*, 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 168 (1982) (citing *Dairy Queen v. Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962); *Beacon Theatres Inc. v. Westover*, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959)).

■ The " 'legal' nature of an issue is determined by considering, first, the pre-merger custom with reference to such questions; second, the remedy sought; and, third, the practical abilities and limitations of juries." *Ross, supra*, at 538 n. 10, 90 S.Ct. at 738 n. 10. After *Curtis v. Loether, supra*, the primary focus in this circuit in analyzing the nature of an issue for seventh amendment purposes is on the second consideration set forth in *Ross*, the type of relief sought. *Hildebrand, supra*, at 708. If a party seeks solely injunctive relief or backpay, the relief sought is equitable and there is no right to a trial by jury. *See, e.g., Harris v. Richards Mfg. Co.*, 675 F.2d 811, 815 n. 2 (6th Cir.1982); *Moore v. Sun Oil Co.*, 636 F.2d 154, 156 (6th Cir.1980); *Hildebrand, supra*, at 708. A party seeking compensatory damages or punitive damages is entitled to a jury trial. *Moore, supra*, at 157; *Hildebrand, supra*, at 708. We observe that punitive damages, though requested in this action, are not available in breach of duty of fair representation cases. *International Brotherhood of Electrical Workers v. Foust*, 442 U.S. 42, 52, 99 S.Ct. 2121, 2128, 60 L.Ed.2d 698 (1979); *see also Quinn v. DiGiulian*, 739 F.2d 637, 647 (D.C.Cir.1984) (*Foust* establishes *per se* rule barring recovery of punitive damages in duty of fair representation cases). Therefore, to the extent that the nature of this action depends on the nature of the relief sought, the request for punitive damages will not be considered.

In addition to the prayer for punitive damages and injunctive relief, the Second Amended Complaint contained a prayer for "compensatory damages." We hold that the nature of the remedy requested by Local 74, insofar as it prays for compensatory damages, is legal. If backpay were

the only harm for which Local 74 could seek compensation, that prayer would possibly be wholly equitable. *See, e.g., Harris, supra.* But see *Massey v. Whittaker Corp.,* 661 F.Supp. 1151, 1153 (N.D.Ohio 1987) (backpay, characterized as breach of contract remedy, is legal remedy absent specific statutory language justifying equitable characterization). Without exhaustively listing all bases upon which compensatory relief could be based in this case, we observe that the former EL employees might have viable compensable claims for other damages arising out of their inability to secure work at the EL yard, such as expenses in moving to find other employment and excessive expenses incurred in pursuing internal remedies. This court recently declined to establish a *per se* rule regarding the right to jury trial in duty of fair representation cases in *Deringer v. Columbia Transportation Division, Oglebay Norton Co.,* 866 F.2d 859 (6th Cir. 1989). *Id.* at 862. *Deringer's* denial of any right to a jury trial was premised on the purely equitable nature of relief sought by plaintiffs there. *Id.* at 863. Because of this distinction, we conclude that *Deringer* does not control the issue of the seventh amendment right to jury trial in cases, such as this one, in which legal remedies are demanded. *Cf. Wood v. International Brotherhood of Teamsters,* 807 F.2d 493, 504–05 (6th Cir.1986) (Contie, J., concurring), *cert. denied,* 483 U.S. 1006, 107 S.Ct. 3232, 97 L.Ed.2d 738 (1987).

In *United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981), the Supreme Court considered which of two state statutes of limitations was appropriate in an action by employees against their employer for breach of their collective bargaining agreement. The Court decided that the action on the agreement was more closely analogous to a suit for vacation of an arbitration award than it was to a typical contract action because to prevail, employees would be required to show, *inter alia,* that the union breached its duty of fair representation. *Id.* at 62, 101 S.Ct. at 1563–64. Consequently, the Court held, the statute of limitations for vacation of an arbitration award was ap-

propriate in that action. *Id.* at 64, 101 S.Ct. at 1564–65. The Court did not consider the applicability of any federal statute of limitations, as that issue was not properly brought before it. *Id.* at 60 n. 2, 101 S.Ct. at 1562 n. 2. In *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), the Court examined a case similar to *Mitchell,* but considered two additional points which *Mitchell* had left open. First, the Court decided that suits against a union for breach of duty of fair representation should be governed by the same statute of limitations as those against an employer for violations of the bargaining agreement. *DelCostello* at 155, 103 S.Ct. at 2285–86. Second, the Court stated that a federal rather than a state statute of limitations should be "borrowed" in actions with no clearly defined statute when the federal intent would be hindered by using a state statute. *Id.* at 162, 103 S.Ct. at 2289. The Court noted that a claim against an employer for breach of the collective bargaining agreement under § 301 of the Labor Management Relations Act, 29 U.S.C. §§ 141 *et seq.,* and a claim against a union for breach of the union's duty of fair representation are "inextricably interdependent" because to prevail on either claim it would be necessary to demonstrate that there was an action contrary to the contract and that there was a breach of duty by the union. *Id.* at 164–65, 103 S.Ct. at 2290–91. (citations omitted). The Court held that the most appropriate statute of limitations to apply to such actions would be the 6–month statute of limitations for making charges of unfair labor practices to the NLRB, set forth at § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), because of the similarities between the actions and the appropriateness to the breach of contract/duty of fair representation action of the considerations set forth by Congress in formulating a 6–month limitations period. *Id.* at 170–71, 103 S.Ct. at 2293–94.

In *Quinn v. DiGiulian,* 739 F.2d 637 (D.C.Cir.1984) the D.C. circuit held that there was a right to jury trial in an action solely against a union and its representa-

tives for breach of their duty of fair representation. *Id.* at 646. Noting that the nature of remedies authorized and sought is central to the jury trial issue, the *Quinn* court stated that the determination in *Del-Costello* that duty of fair representation suits have "no close analogy to ordinary state law so as to recommend a particular state statute of limitations" offers little support for the argument that a duty of fair representation action is equitable in nature for seventh amendment purposes. *Id.* Conversely, the eleventh circuit in *Leach v. Pan American World Airways,* 842 F.2d 285 (11th Cir.1988) held that there is no right to jury trial in breach of duty of fair representation cases. *Id.* at 290–91. The *Leach* court stated that *Mitchell* and *DelCostello* toppled the rationale behind the former rule that litigants in duty of fair representation suits were entitled to jury trial because that rule was based on the rationale that fair representation suits closely resembled common law tort actions, whereas the Supreme Court cases expressly rejected the view that fair representation cases had any close analogy to ordinary state law. *Id.* at 287. The court discussed the fact that the remedies against the employer are "clearly equitable" and, under *DelCostello,* the claims against the employer and the union were held to be "inextricably interdependent." Therefore, the court reasoned, if one examines the right to jury trial by characterizing the nature of the remedy, the duty of fair representation action must also be viewed as an equitable one that does not invoke the seventh amendment right to trial by jury. *Id.* at 287–88. The *Leach* court concluded that duty of fair representation claims must be analogized to unfair labor practice charge claims. *Id.* at 289. There is no right to jury trial on unfair labor practice claims; thus, the court concluded, no right to jury trial exists in duty of fair representation cases. *Id.* at 290. In *Terry v. Chauffeurs, Teamsters & Helpers, Local 391,* 863 F.2d 334 (4th Cir.1988), the fourth circuit adopted the reasoning of *Quinn* and rejected that of *Leach* in deciding that the fact that a hybrid action has no close analogy to state law does not resolve the legal/eq-

uitable determination necessary for seventh amendment analysis; rather, the key to the inquiry is the nature of the remedy sought. *Terry* at 338.

We adopt the reasoning set forth in *Quinn* and *Terry* in finding a right to jury trial here. Noting that analogies to state-law actions are helpful in seventh amendment analysis, the *Terry* court stated:

[T]he absence of a single clear analogy does not preclude a determination that a statutory action involves "rights and remedies of a sort typically enforced in an action at law." *Curtis [v. Loether, supra,]* 415 U.S. at 195, 94 S.Ct. at 1008–1009.... *Ross [v. Bernhard, supra]* and *Curtis* made clear that the nature of the claims and remedies determine whether a right to a jury trial is present, *not* the overall nature of the action. Making a law/equity determination for seventh amendment purposes is a far different task than choosing a statute of limitations in a labor-law context. While the hybrid action we consider is the same kind of action the Supreme Court considered in *Mitchell* and *DelCostello,* there is no need for us to treat the hybrid action as an indivisible whole when performing a seventh amendment analysis. Indeed, the *Beacon Theatres [Inc. v. Westover, supra,]* line of cases instructs us to do just the opposite.

*Terry* at 338. The court went on to state that there is no "bright-line rule" stating which specific issues in a hybrid § 301/duty of fair representation case are subject to the seventh amendment requirement of a jury trial, holding that either party is entitled to a jury trial of identifiable legal issues. *Id.* at 338–39. We do not find persuasive the argument that the equitable nature of claims against an employer compels us to view derivative claims against a union also to be equitable; while the two claims are indisputably "inextricably interdependent," *DelCostello* at 164–65, 103 S.Ct. at 2290–91, there is no compelling reason that the claim against the union should not be subject to trial by jury. The Court in *DelCostello* based its decision in part on the impracticability of permitting a

longer statute of limitations on claims against the union, for the union would usually only be responsible for increases in a plaintiff's damages caused by its breach of duty. No similar consideration exists in the present case. Indeed, we observe that even if this were a hybrid § 301/duty of fair representation case, the legal and equitable claims are easily separable, as disposition of the duty of fair representation claim is an "indispensable predicate" for a hybrid action. *See Mitchell, supra,* at 62, 101 S.Ct. at 1564.

When there is no functional justification for denying it, the seventh amendment right to trial by jury "must be available if the action involves rights and remedies of the sort typically enforced in an action at law." *Curtis v. Loether, supra,* at 195, 94 S.Ct. at 1009. Trial by jury in a breach of duty of fair representation case does not present formidable functional barriers. Because the relief sought here is, in part, legal in nature, we conclude that Local 74 was entitled to trial by jury.

## III. EXHAUSTION OF INTERNAL UNION REMEDIES

■ Courts generally require employees to exhaust internal union remedies before bringing suit against the union when adequate remedies are available through internal union channels. *See Clayton v. UAW,* 451 U.S. 679, 696, 101 S.Ct. 2088, 2099, 68 L.Ed.2d 538 (1981); *Geddes v. Chrysler Corp.,* 608 F.2d 261, 264 (6th Cir.1979). However, it is well settled that futility is an excuse for failure to exhaust internal union remedies. *Glover v. St. Louis–San Francisco Railroad Co.,* 393 U.S. 324, 329, 89 S.Ct. 548, 551, 21 L.Ed.2d 519 (1969). Specifically, employees need not resort to internal union remedies if it would be futile to do so because the position of the union is clearly "hardened" against them. *Geddes, supra,* at 265. It is clear that Local 74 did not exhaust all available internal union remedies, for it could have appealed to the Union Board of Appeals the October 1981 decision by the UTU president not to merge seniority rosters to establish yard equity (and his subsequent refusal to alter this decision). Local 74 contends that it should

be excused from the exhaustion requirement because UTU was clearly hostile toward the position of the employees. We hold that Local 74 presented sufficient evidence to preclude a directed verdict on this issue.

■ In *Geddes, supra,* this court held that resort to intraunion remedies might be futile because the employees in that case were confronted with apparent acquiescence by their union in an action taken by their employer that was unfavorable to them. *Id.* at 265. This court also stated that

> the mere passage of time is seen as militating against requiring the plaintiffs to go back now and plead their case to the union Appeals Board or the union president; the union has been aware of this dispute concerning its members for five years and has had sufficient time to "set its own house in order," which is the primary purpose of the exhaustion requirement.

*Id.* Here, Local 74 has presented evidence that it diligently pursued its claims for six years before bringing this action. Although appeal of the claim for yard equity to the Union Board of Appeals was never made, we would find Local 74's excuse, if proven, adequate, that it was unable to obtain necessary data for establishing equity because of procrastination and stonewalling by UTU officials. We observe that UTU officials may have misled employees as to the status of negotiations concerning yard equity and, following the 1979 Board of Appeals decision in which it was determined that equity could not be shown by identifying specific diverted trains, the officials continued to insist that equity could not be granted absent identification of diverted trains. If Local 74 is found to have faced this sort of hostile situation, we would conclude that further pursuit of internal union remedies would be futile, obviating the need to exhaust internal union remedies.

## IV. DUTY OF FAIR REPRESENTATION

■ The duty of fair representation is grounded in labor organizations' exclu-

sive right to represent all unit employees in collective bargaining, thereby depriving individuals of the ability to bargain individually or select a minority union as their representative. *See DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 164 n. 14, 103 S.Ct. 2281, 2290 n. 14, 76 L.Ed.2d 476 (1983). In order to permit individual employees to protect their own interests, the representative organization has a duty "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Id.* (quoting *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 909–10, 17 L.Ed.2d 842 (1967)). The test of whether the duty to represent has been upheld by a union seeking to accommodate two conflicting groups is whether a rational method was used to resolve the conflict. *Humphrey v. Moore*, 375 U.S. 335, 349–50, 84 S.Ct. 363, 371–72, 11 L.Ed.2d 370 (1964). Because of the conflicting and often irreconcilable interests of classes of employees represented by a union, unions are afforded a "wide range of reasonableness" in representing employees. *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953).

Local 74's claim here is that UTU clearly had a duty to negotiate with former EL employees as to equity concerning diverted work, but ignored that duty and, in fact, hindered the employees' efforts in attempting to assert seniority rights by delaying action and failing to compile the proper data. Although the union would indeed have wide discretion in actually reconciling conflicting employee interests, the allegations here are not that their complaints were unfairly resolved, but rather that the union refused properly to consider their claims. The test of whether the union properly resolved the conflicts presented does not apply where the union allegedly failed for six years diligently to consider the merits of the claims asserted. Therefore, a directed verdict for UTU on the issue of duty of fair representation would not be appropriate and this would not be a basis for affirming the district court's judgment.

Accordingly, the judgment of the district court is vacated and this case is remanded for further proceedings consistent with this opinion.

WELLFORD, Circuit Judge, dissenting:

The issue is whether the local union representing plaintiffs in this case is entitled to a jury on the question whether the international union (UTU) breached its duty of fair representation. The majority opinion refers to the union constitution's provision in the situation of permanent diversion of work assignments from one railroad carrier to another to arrange a "fair and *equitable* division of the work involved" (emphasis added). The dealings between the union and the members who had worked for Erie Lackawanna (EL) involved what is described as "road equity" and "yard *equity*." (In this case the latter is the real issue). In the prayer for relief the local union on behalf of former EL yard workers requested that UTU, "*take* all *reasonable* and necessary steps" to obtain for plaintiffs a "fair and equitable division of all former EL work." (Majority pp. ——). Because plaintiffs concede that they received "monthly displacement allowances" while they were not doing yard work that was formerly done by them when working for EL, it is clear that equitable or backpay relief was their overriding interest, not compensatory damages.

I find that precedent in this circuit compels a finding that no jury right exists in a hybrid action against a union. Judge Contie of this court suggested this result in his concurring opinion in *Wood v. International Brotherhood of Teamsters*, 807 F.2d 493, at 504 (6th Cir.1986):

In determining whether the right to a jury trial exists for a newly-created action, the focus is "on the nature of the issue to be tried rather than the character of the overall action." *Ross v. Bernhard*, 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970)

\*    \*    \*    \*    \*    \*

The individual issues presented in this case, as in any hybrid § 301 action, are whether the Union breached its duty of fair representation and whether the employer, Kroger, breached the collectively bargained labor contract. I would find that the fair representation issue is equitable in nature, and therefore not triable to a jury, because the primary relief sought for breach of the duty of fair representation is equitable.

We relied on Judge Contie's concurrence and explicitly held that a plaintiff did not have a jury right in a hybrid action against his union in *Deringer v. Columbia Transp. Division*, 866 F.2d 859 (6th Cir.1989) (citing, in addition, *Hildebrand v. Bd. of Trustees of Mich. St. Univ.*, 607 F.2d 705, 708 (6th Cir.1979), *cert. denied*, 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 168 (1982)). *See also Chrysler Workers Assn's v. Chrysler Corp.*, 663 F.Supp. 1134 (N.D. Ohio 1986), *aff'd* 834 F.2d 573 (6th Cir. 1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 2017, 100 L.Ed.2d 604 (1988).

The majority, I believe mistakenly and contrary to our normal procedures, looks to other circuits for authority to reverse the district court in this case instead of relying on authority in this circuit. *Terry v. Chauffeurs, Teams. & Helpers, Local 391*, 863 F.2d 334 (4th Cir.1988) concedes that LMRA actions, "and other labor law statutes do not neatly fit any mold of traditional common law actions" (which would mandate a jury trial) but held that a declaratory action complaint in a § 301 action "raises legal issues ... [including] a resolution by the jury of disputed facts concerning whether the agreement was breached." *Id.* at 339. *Terry*, however, conceded that back pay claims and injunctive relief may be equitable in nature, but held that intertwined claims having both legal and equitable characteristics may be heard by a jury. *Id.* at 338 (citing *Quinn v. DiGiulian*, 739 F.2d 637 (D.C.Cir.1984)).[1] To the extent the court feels compelled to rely on authority outside this circuit, I find the reasoning of *Leach v. Pan American*

*World Airways*, 842 F.2d 285, 290–91 (11th Cir.1988) to be persuasive on the question before us. It holds that because the issue presented in this type of case is essentially equitable in nature, no jury trial right exists.

I would affirm the district court because I believe Sixth Circuit authority clearly indicates that plaintiff is not entitled to a jury trial in this § 301 case. I accordingly Dissent.

---

1. It should also be noted that the Supreme Court granted certiorari in the *Terry* case. Perhaps the court will resolve this apparent split in the circuits. *See* 57 U.S.L.W. 3826 (1989).