**Donald BLACK, Plaintiff–Appellant,**

v.

**RYDER/P.I.E. NATIONWIDE, INC.;
and Teamsters Local #519,
Defendants–Appellees.**

No. 90–5035.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 10, 1990.

Decided April 15, 1991.

Rehearing and Rehearing En Banc
Denied June 21, 1991.

Peter Alliman, Lee, Alliman & Carson, Madisonville, Tenn., for Donald L. Black.

Howard H. Vogel, O'Neil, Parker & Williamson, Knoxville, Tenn., Peter Reed Corbin, Corbin & Dickinson, Jacksonville, Fla., John Paul Jones, Clearwater, Fla., for Ryder/P.I.E. Nationwide, Inc.

Cecil D. Branstetter, Jane B. Stranch, Branstetter, Kilgore, Stranch & Jennings, Nashville, Tenn., for Teamsters Local # 519, and Joint Council # 87 of the Intern. Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of America.

G. William Baab, Mullinax, Wells, Baab & Cloutman, Dallas, Tex., for Southern Conference of Teamsters, Intern. Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of America.

Before NELSON, Circuit Judge; WELLFORD *, Senior Circuit Judge; and JOINER **, Senior District Judge.

WELLFORD, Senior Circuit Judge.

This is a hybrid § 301/unfair representation action brought against a trucking company and a teamster local by a driver who lost both an arbitration proceeding and his job after he allegedly failed to report an accident. The driver, who insisted that he had not had an accident, was represented in the arbitration proceeding by a union business agent who was said to have been a political enemy.

Because the district court did not read the plaintiff's claim for money damages as extending to the union (except for a Landrum–Griffin Act claim that had been severed), the court ruled that the case against the union should be tried to the court rather than to a jury. The plaintiff promptly moved to amend the complaint by adding a prayer for damages against the union, but this motion to amend was denied.

The district court then ordered a bifurcated bench trial, with the case against the union being heard first. 730 F.Supp. 102. If the plaintiff prevailed on his unfair representation claim against the union, he was then to receive a jury trial on his wrongful discharge claim against the company. No jury trial was ever held because the district judge decided for the defendant union.

The plaintiff contends on appeal, among other things, that he was entitled to a jury trial on both claims. We are persuaded that the plaintiff had such a right and

---

* Honorable Harry W. Wellford assumed senior status on January 21, 1991.

** Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation.

therefore REVERSE the judgment entered by the district court.[1]

## I.

On November 26, 1984, the plaintiff truck driver, Donald L. Black, drove a loaded truck from Knoxville, Tennessee, to Birmingham, Alabama. After the truck had been left at the Birmingham terminal, a mechanic discovered some damage to the front-end of the vehicle. The defendant employer, Ryder/P.I.E. Nationwide, Inc., then discharged Black for failure to report an accident.

Black filed a grievance through Teamsters Local 519, which is the other defendant here. The grievance was heard on December 17, 1984, by a joint committee that the governing collective bargaining agreement designates as the final arbiter. Black, who was present at the hearing, was represented by Business Agent Jimmy Metts of Local 519.

Ryder called no witnesses at the grievance committee hearing, but introduced documents that include a vehicle repair order prepared by the mechanic at the Birmingham terminal. The report contained this language:

> Unit came in with damage on L. front. L. turn signal and marker light knocked off. Area around unit inspected and no broken lenses or fiberglass around unit.

The company also introduced relevant correspondence, a diagram of the service aisle at the terminal, photographs of the damaged truck, and documents relating to the repairs.

The theory of the case presented by Business Agent Metts was that the truck was in working condition when Black left Knoxville; that there was no accident during the trip; that the truck was undamaged when Black left it at the terminal; and that the damage must therefore have occurred subsequently. In presenting this theory,

Metts read Black's grievance into the record. The grievance explained that Black had been in a convoy with two other trucks throughout the run from Knoxville to Birmingham, and that three more trucks accompanied the group for part of the trip. The drivers were never more than half a mile apart, the grievance said, and they passed each other periodically. The other drivers would verify that Black's turn signals were operating at all times and that no accident occurred during the trip.

Metts also introduced written statements from other drivers, including the two who had accompanied Black throughout the trip. They said that they had observed Black's turn signals in operating condition and had seen no incident that would have resulted in damage to the truck. One of the men said that he noticed, prior to leaving the Birmingham terminal at the end of the run, that a truck was being moved between the service aisle and the tire shop. He recalled, the statement continued, that Black had remarked that this was the truck he had driven in from Knoxville.

After presenting the statements of Black's fellow drivers, Metts introduced documents showing that Black and two other drivers arrived at the Birmingham terminal at approximately 5:30 a.m. on November 26, 1984. The committee was asked to note that the company's records showed that Black's truck was not serviced until more than two hours later.

Metts explained to the committee that Black, who had been employed by Ryder for twenty years, was within seven months of retirement at the time of his discharge. Metts offered trip sheets indicating that it was Black's practice to report damage to this truck whenever he observed such damage. Pointing out that the damage at issue here was repaired at a cost of only $200 (although the company's estimate was somewhat higher), Metts argued that it would have been foolish for Black to jeop-

---

**1.** Subsequent to the filing of the notice of appeal, the defendant trucking company filed a voluntary petition for bankruptcy under Chapter 11 of the Bankruptcy Code. We requested supplemental briefing on the question whether the bankruptcy has any effect on the appeal, and the parties are in agreement that it does not. 11 U.S.C. § 362 provides for an automatic stay of pending proceedings against the debtor, but the plaintiff driver's claim against the union is not a claim against the debtor. We see no reason to stay the issuance of this opinion.

ardize his retirement by not reporting the damage if he had been aware of it. This argument was supported by evidence of ten subsequent occasions on which truck damage had been noted at the Birmingham terminal and no one had been disciplined.

Metts explained further that Black was not notified of the damage until approximately thirteen hours after its discovery. Black then contacted Metts, and Metts asked Ryder for permission to inspect the damaged truck. The company replied that the truck had already been repaired and put back on the road; Metts therefore had no opportunity to inspect the damage.

Metts told the committee that the pictures of the damaged truck showed it parked in a spot other than the one where Black had left it. The truck had obviously been moved by a hostler, Metts argued, and the damage must have occurred in that move. Black himself testified at the hearing before the grievance committee. His testimony substantiated the main points made by Metts.

Ryder, for its part, told the committee that Black's truck had been moved after the damage was discovered, not before. The company said that the crew at the Birmingham terminal had examined the ground around the truck in its original location, and had not found the sort of debris that would have been left had the damage occurred after the truck was returned.

The grievance committee decided the case in favor of Ryder. Black then sued Ryder and the union under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Black asserted a claim against Ryder for violating the collective bargaining agreement by discharging him without just cause. Local 519 was claimed to have violated its duty of fair representation.

In connection with his claim against the union, Black alleged that he was a member of a dissident group that was a political threat to Metts and others then holding power at the union. Black claimed that

because of political and personal animosity, the union did not represent him properly. The union was faulted for, among other things, failing to send anyone to the Birmingham terminal to interview witnesses there. The relief requested in the complaint included declaratory relief, a reinstatement order, and compensatory and punitive damages from Ryder. The district court allowed an amendment to increase the prayer for damages against Ryder, but this amendment did not involve the union.

The district court eventually ordered that Black's unfair representation claim be tried to the court. If Black succeeded on that claim, the breach of contract claim against Ryder would be tried to a jury.[2] The court concluded that Black was not entitled to a jury trial on the unfair representation claim because the only relief requested in connection with that claim was equitable in nature.

Black then moved for leave to amend his complaint to seek damages from the union and to request a jury trial on the unfair representation claim. The court denied this motion, noting that the case had already been pending for some four years. The court concluded that the defendants would be prejudiced if an amendment were permitted so close to the trial.

During the bench trial, the court refused to let a purported expert, Roy Rogers, give certain opinion testimony. Rogers was one of the drivers who had accompanied Black part of the way to Birmingham; his statement had been introduced at the grievance hearing. Rogers was permitted to testify that he was a retired member of the Teamsters and had served as president of Local 519 over a year, during which time he had been involved in a few discharge cases. He testified about the events of the night of the trip to Birmingham, about Black's involvement in a dissident movement within the union, and about Black's strained relationship with Metts and other union leaders. The court sustained an objection to the following question: "Have you come to any opinions, as to whether or not Mr. Metts performed within the standard of

2. The punitive damage claim against Ryder was    ordered stricken.

acceptable representation for a representative of a discharged employee?" The court also sustained an objection to a question on whether the accident report was admissible under the rule governing grievance hearings. Rogers, the court said, could not present conclusions as to whether "this matter [was] handled properly or improperly or whether the rules were followed or not followed. That is for this court to decide."

On appeal, Black contends that the district court erred by (1) striking the jury demand as to the unfair representation claim; (2) bifurcating the trial; (3) refusing to allow a second amendment to the complaint; (4) striking the claim for punitive damages; (5) excluding the opinion testimony of Roy Rogers; and (6) dismissing the unfair representation claim.

## II.

■ In declining to accord Black a jury trial on his unfair representation claim, the district court relied on this court's decision in *Deringer v. Columbia Transportation Division*, 866 F.2d 859 (6th Cir.1989). *Deringer* was a hybrid § 301/unfair representation case where, in addition to seeking declaratory relief, the plaintiff sought reinstatement to his former position on a seniority list. Because the plaintiff did not expressly request monetary damages against the union, although he did request attorney fees and costs, the district court concluded that the unfair representation claim against the union was equitable in nature and was triable to the court. We agreed: "Without establishing a per se rule for all such hybrid § 301 suits, in the particular circumstances of this case, we conclude that the district court's denial of Deringer's request for a jury trial was proper, at least with regard to the fair representation issue." *Id.* at 862.

In the case at bar, plaintiff Black argues that he presented issues of a legal nature in his unfair representation claim. He further argues that the Supreme Court's recent decision in *Chauffeurs, Teamsters & Helpers, Local 931 v. Terry*, 494 U.S. 558, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990), shows that he was entitled to a jury on this claim. The unfair representation claim presented by Black in the original complaint may have been equitable rather than legal in nature, and we do not read *Terry* as teaching that exclusively equitable claims are triable to a jury. Black, however, promptly moved to amend his complaint to assert damages against the defendant union once the district court had denied him a jury trial on the original complaint.

The employees in the *Terry* case were seeking an award of money damages against the union. The claim for money damages was being asserted only against the union, the employer (which was bankrupt) having been voluntarily dismissed. On these somewhat unusual facts, the Supreme Court found that the claim against the union was a claim at law:

On balance, our analysis of the nature of respondents' duty of fair representation action and the remedy they seek convinces us that this action is a legal one. Although the search for an adequate 18th-century analog revealed that the claim includes both legal and equitable issues, *the money damages respondents seek are the type of relief traditionally awarded by courts of law. Thus, the Seventh Amendment entitles respondents to a jury trial ....*

*Id.* 110 S.Ct. at 1349 (emphasis supplied). Here, the plaintiff's original complaint requested damages from the employer but not from the union. The complaint did ask for an award of "reasonable attorney's fees and all costs against the defendants, jointly and severally," and it is questionable whether this is sufficient to turn what would otherwise be a claim triable in equity to one triable at law. In our view, however, the district court erred when it declined to allow an amendment two months prior to trial to add a legal claim against the union, in addition to the equitable claim. Defendant union was prepared to try the case on the same basic issues of fact regardless of whether the legal claim was added, and it had two months until the trial date.

Had the amendment been permitted, as we believe and hold that it should have been, it seems clear that *Terry* would have required that Black was entitled to a jury

trial. We are sympathetic with the district court because at the time of its decision it was following the *Deringer* rationale, but *Terry* gives a right to a jury trial where damages are sought in a § 301 action incidental to the equitable fair representation claim.

In light of this decision, whether or not bifurcation of the trial is appropriate will be left to the district court on remand. We recognize the problem inherent in the bankruptcy situation of the defendant employer in this case. In any event, when the union cannot be held liable for unfair representation, of course, the employer cannot be held liable for breach of the collective bargaining agreement. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 570–72, 96 S.Ct. 1048, 1059–60, 47 L.Ed.2d 231 (1976).

We recognize that the district court may later be called upon to decide in a jury trial context, at the conclusion of plaintiff's proof and/or at the conclusion of all the proof, whether a directed verdict may be appropriate. Black is entitled, however, to a jury trial and we are not prepared to rule that he may not be able to prevail on his jury claims.

### III.

We are disposed to rule upon one matter which may assist upon retrial. Plaintiff argued that Metts ought to have objected to the introduction at the grievance hearing of the mechanic's vehicle repair order. The argument is based on the following passage from the rules of procedure used by grievance committees:

All persons testifying shall answer all pertinent questions propounded to them by the opposite party or any member of the committee. All parties shall bring any pertinent written records or documents upon which they rely to support their case. Whenever a written statement is taken by the Employer or the Union, the party taking the statement must afford the other party an opportunity to be present when the statement is taken. Otherwise, the statement will not be allowed as evidence in a Committee hearing. This does not apply to statements of physicians or Union and/or Employer representatives.

Black contends that pursuant to this rule, a union representative should have been present when the mechanic wrote that the "unit came in with damage." We agree with the ruling of the district court, however, that because the vehicle repair order was prepared in the ordinary course of Ryder's business, it is not the type of "written statement" to which the third and fourth sentences of the quoted rule were intended to apply. There was no showing that Metts' failure to object to the admission of this document was discriminatory, dishonest, or arbitrary, moreover, and as a matter of law it would have made no difference if Metts made an honest mistake in failing to object.

### IV.

The only remaining issue we need address concerns the district court's evidentiary rulings on the testimony of the purported expert witness, Roy Rogers. Rule 704, Fed.R.Evid., provides that in civil cases "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." In the advisory committee's note, however, it is explained that:

The abolition of the ultimate issue rule does not lower the bars so as to admit all opinions. Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day.

We agree with Black's contention that under Rule 704 opinion testimony is not excludable merely because it embraces an ultimate issue. The district court was still free, however, to exclude opinion testimony that the court concluded would not be helpful to its factfinding mission. Given that Rogers' qualifications as an expert were in doubt because of his limited experience with discharge cases during his tenure as the president of Local 519, we cannot say as a matter of law that Rogers' excluded

testimony would have been "helpful" to the trier of fact.

We, accordingly, REVERSE and REMAND for further proceedings consistent with this opinion.

CHARLES W. JOINER, Senior District Judge, concurring. I agree that the case should be reversed and remanded. I believe that *Chauffeurs, Teamsters & Helpers, Local 931 v. Terry,* 494 U.S. 558, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990), controls.

DAVID A. NELSON, Circuit Judge, dissenting. Like Judge Wellford, I do not read *Chauffeurs, Teamsters & Helpers, Local 931 v. Terry,* 494 U.S. 558, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990), as teaching that exclusively equitable claims are triable to a jury. Unlike Judge Wellford, however, I am not persuaded that the district court abused its discretion in refusing to allow a second amendment to the complaint after the case had been pending for some four years.

Finding no prejudicial error in the record before us, I would affirm the judgment of the district court.